[Crim. No. 6887. In Bank. Oct. 11, 1961.]

THE PEOPLE, Plaintiff and Respondent, v. ALFRED S. McLEAN, Defendant and Appellant.

Glenn West, Jr., under appointment by the Supreme Court, for Defendant and Appellant.

Stanley Mosk, Attorney General, Arlo E. Smith and John S. McInerny, Deputy Attorneys General, for Plaintiff and Respondent.

McCOMB, J.—Defendant appeals from a judgment of guilty of (1) furnishing a narcotic to a minor on or about December 1, 1958 (Health & Saf. Code, former § 11714, now § 11532) and (2) possession of marijuana on or about July 10, 1959 (Health & Saf. Code, § 11530), after trial before a jury.

The jury further found that defendant had previously been convicted of two federal narcotic violations: (a) illegal transfer of marijuana (26 U.S.C., former § 2591(a), now § 4742 (a)) and (b) illegal possession of marijuana (26 U.S.C., former § 2593 (a), now § 4744 (a)).

These questions are presented:

■ First. *Was there substantial evidence to sustain the finding of the jury that defendant furnished a narcotic to a minor?*

*No.* Defendant's alleged victim in this case was a 16-year old girl named Michele Ellis, who was a junior at San Rafael High School during the time the alleged crimes occurred. Defendant was a jazz musician.

Miss Ellis testified that she first met defendant during the latter part of 1958 at a San Francisco night club; that she met him again a month or two later and then saw him for a third time in February or March 1959; that on the last occasion she was at a beer and wine bar with her mother; that her mother left but she remained at the bar; that about midnight she left with defendant and went to his apartment; that he gave her a hand-rolled cigarette containing green tobacco; that she saw the tobacco when it was lit, that is, at the end; that she did not remember whether or not she looked at the tobacco; that she and defendant smoked it together; that the smoke smelled sweet like incense; that while smoking the cigarette she "felt sort of happy . . . Just felt good, that's all"; that this was the only physical effect she experienced from smoking it; that this was only the second time she had supposedly smoked a marijuana cigarette, but that she did so on about five occasions thereafter; and that she recognized what she smoked as marijuana, because she had seen pictures of it in a newspaper and in books, and marijuana and its effects had been described to her by people with whom she had talked. Over objection, she was permitted to testify that the cigarette which defendant gave her contained marijuana.

Miss Ellis then testified, over objection that a variance was involved, that the second time she met defendant they went to his apartment and smoked a cigarette together; that the smoke smelled sweet; and that the only physical effect from smoking the cigarette was that she "felt good—just happy." Again, she was permitted to testify, over objection, that in her opinion the cigarette was marijuana. She stated that this

was the first time she ever smoked marijuana and that she had not even seen marijuana before.

A state narcotic chemist testified that marijuana has an acrid smell when burning, like burning weeds.

Defendant took the witness stand and denied ever having given Miss Ellis a cigarette containing marijuana.

The only evidence in the record which can support defendant's conviction of furnishing marijuana to a minor is the testimony of the prosecuting witness, Miss Ellis, given over the objection that it was improper and unqualified opinion evidence in which she identified the contents of the cigarette she smoked as in her opinion being marijuana.

The objections should have been sustained to the questions asked Miss Ellis as to what she smoked, for the reason that she was not qualified to give expert testimony. Miss Ellis was inexperienced with narcotics. Her only contact with drugs was the smoking on "about" seven occasions of cigarettes which she thought contained marijuana. There was no evidence that what she smoked on the five occasions subsequent to those involved in this case was in fact marijuana. There was no proper foundation supporting her testimony as to the fact that defendant had furnished her marijuana.

 The rule is settled that a witness is not qualified as an expert unless it is shown that he is familiar with the subject upon which he is asked to give an opinion. In this case it is clear that the witness did not know what marijuana was or its effects. (*Trust* v. *Arden Farms Co.,* 50 Cal.2d 217, 224 [13, 14] [324 P.2d 583].)

The trial court therefore abused its discretion in overruling the objections of defendant to Miss Ellis' testimony as to what was in the cigarettes which defendant furnished her.

Second. *Was defendant's arrest lawful, and were the narcotics found in his possession lawfully seized?*

*Yes.* The arresting officers testified that they had a warrant issued against defendant under the name of "Scotty Lane." One of the officers testified that he had heard of defendant prior to his arrest under that name and that several persons had identified defendant by that name.

 Defendant contends that the warrant was void because it was issued in a fictitious name (see Fricke, California Criminal Procedure (5th ed. 1959), p. 23), and that therefore the officers had no right to search defendant's apartment and, as a result, the seizure of the marijuana there was illegal.

However, as "Scotty Lane" was a name used by defendant, it was not a fictitious name. The warrant was not void.

■ Defendant complains of the testimony of Officer Logan to the effect that at the time he executed the warrant he asked defendant if his name was Scotty Lane, and defendant replied that he used that name when he played as a musician. This evidence was competent to explain the name in the warrant.

■ Defendant admitted that he told the officers after he was arrested, when they asked him if he had any narcotics on the premises, to go ahead and look. It was therefore not necessary for the People to show that the search and seizure were reasonable as incident to a proper arrest, for the evidence disclosed that defendant freely consented to the search of his apartment, which search disclosed the evidence claimed to have been illegally obtained. (*People* v. *Burke*, 47 Cal.2d 45, 49 [1] [301 P.2d 241].)

■ Third. *Was there substantial evidence to support the finding that defendant had previously been convicted of prior narcotic violations, within the meaning of section 11530 of the Health and Safety Code?*

*Yes.* Section 11530 of the Health and Safety Code provides, in part: "If [a person convicted under this section] has been previously convicted of any offense described in this division [division 10] or has been previously convicted of any offense under the laws of any other state or of the United States *which if committed in this State would have been punishable as an offense described in this division,* the previous conviction shall be charged in the indictment or information and if found to be true . . . he shall be imprisoned in the state prison for not less than two years nor more than 20 years." (Italics added.)

The jury found that defendant had been previously convicted in the United States District Court for the District of Columbia of (1) a violation of section 2591(a), title 26, United States Code (illegally transferring marijuana, a felony) and (2) a violation of section 2593(a), title 26, United States Code (illegally possessing marijuana, a felony). Both of these code sections appear under the heading "Regulatory Taxes."

Section 2591(a) (now § 4742(a)) of title 26, United States Code, provided as follows: "It shall be unlawful for any person, whether or not required to pay a special tax and register under sections 3230 and 3231 [now §§ 4751 to 4753, inclusive],

to transfer marihuana, except in pursuance of a written order of the person to whom such marihuana is transferred, on a form to be issued in blank for that purpose by the Secretary." Certain exceptions to this requirement were set forth in section 2591(b) (now § 4742(b)).

Section 11531 of the Health and Safety Code, which section is in division 10, provides: "Every person who transports, imports into this State, sells, furnishes, administers or gives away . . . any marijuana shall be punished by imprisonment in the county jail for not more than one year, or in the state prison from five years to life. . . ."

Both the California statute and the federal statute make the transferring of marijuana an offense. The California statute, however, is broader than the federal one, the latter making exceptions not provided for in the state statute. Therefore, any violation of the federal statute would constitute an offense which, if committed in this state, would have been punishable as an offense described in division 10 of the Health and Safety Code.

*People* v. *Machado,* 180 Cal.App.2d 63, 67 [4 Cal.Rptr. 110], considered this federal statute and held: "It is clear that the acts constituting the essential substance of the offense of which defendant was previously convicted, to wit, the unlawful sale of marijuana, would have been punishable as an offense against division 10 of the Health and Safety Code."

Accordingly, the conviction under former section 2591(a) (now § 4742(a)), title 26, United States Code, would constitute a prior conviction under section 11530 of the Health and Safety Code.

Nor does a different situation arise as to the conviction under former section 2593(a) (now § 4744(a)), title 26, United States Code. That section provided as follows: "It shall be unlawful for any person who is a transferee required to pay the transfer tax imposed by section 2590(a) [now § 4741(a)] to acquire or otherwise obtain any marihuana without having paid such tax; and proof that any person shall have had in his possession any marihuana and shall have failed, after reasonable notice and demand by the collector, to produce the order form required by section 2591 [now § 4742] to be retained by him, shall be presumptive evidence of guilt under this section and of liability for the tax imposed by section 2590(a) [now § 4741(a)]."

Both possession of marijuana and a failure to pay the transfer tax thereon are essential for conviction under the federal

statute. Under the state statute, on the other hand, the possession of marijuana is made unlawful regardless of whether or not a transfer tax has been paid. A violation of the federal statute would therefore constitute an offense which, if committed in this state, would have been punishable as an offense described in division 10 of the Health and Safety Code.

Both the federal statutes and the state statutes were designed to make the illegal transfer or possession of marijuana a crime, and the fact that the federal statutes appear under the heading "Regulatory Taxes" is immaterial.

Likewise, it is not significant that the federal statutes are not the exact counterparts of the state statutes. It is enough that they denounce the same general conduct.

In *People* v. *Bigelow,* 94 Cal.App. 28 [270 P. 460], where the primary charge was violation of the State Poison Act, and a prior conviction of violation of the federal Harrison Narcotic Act was proved, the court said at page 29: "While the so-called State Poison Act (Stats. 1907, p. 124, as variously amended) is not the exact counterpart of the Harrison Narcotic Act, in its substance, in part, it denounces the same general conduct. . . ."

The judgment is reversed on the count finding defendant guilty of furnishing a narcotic to a minor and affirmed on the count finding him guilty of possession of marijuana.

Gibson, C. J., Traynor, J., Schauer, J., Peters, J., White, J., and Dooling, J., concurred.

Appellant's petition for a rehearing was denied November 8, 1961.