[Crim. No. 13672. In Bank. Oct. 29, 1970.]

In re TROY JOHNSON on Habeas Corpus.

## Counsel

Troy Johnson, in pro. per., and Marcus Vanderlaan, under appointment by the Supreme Court, for Petitioner.

Thomas C. Lynch, Attorney General, Doris H. Maier, Assistant Attorney General, and James T. McNally, Deputy Attorney General, for Respondent.

## Opinion

**PETERS, J.**—Troy Johnson petitions for a writ of habeas corpus. He asserts the invalidity of his two concurrent 10-year minimum sentences, imposed in 1965 upon his conviction of two counts of selling marijuana with two priors. (Health & Saf. Code, § 11531.)

Petitioner was convicted in 1950 of a violation of the federal offense of acquiring marijuana without having paid the federal Marijuana Transfer Tax. (26 U.S.C. § 2593(a), now § 4744(a)(1).) Upon violating probation, he served six months in a federal correctional institution in Texas.

Petitioner was convicted in 1954 of possession of marijuana (Health & Saf. Code, § 11500), and served five months in the Alameda County jail.

In November of 1965, and after waiving a jury, petitioner went to trial on two counts of sale of marijuana under an indictment supplemented to charge the two prior offenses described above. When the district attorney introduced evidence of the two priors during his case-in-chief, petitioner's

attorney indicated that he had not previously seen the supplemental indictment charging the priors, and that he had not researched the question whether the federal offense could be treated as a prior.

The court indicated that counsel could research the matter and present any argument on the following day, at which time the district attorney cited *People* v. *McLean*, 56 Cal.2d 660 [16 Cal.Rptr. 347, 365 P.2d 403], for the proposition that the federal tax offense constituted a prior offense for purposes of Health and Safety Code section 11531. When the court invited petitioner's counsel to discuss the question, the latter replied: "I haven't read the McLean case yet, Your Honor. My position was since I am the defense I was going to let them bring forward proof and rely on the lack of proof."

After counsel argued at length the possibilities of conviction of mere possession and the sufficiency of the priors, the court found petitioner guilty of two counts of sale of marijuana, indicated an intention to make the sentences concurrent, and concluded that the federal offense constituted a "good prior felony" while the later offense was "[n]ot a prior felony. It is a prior misdemeanor conviction."

Apparently the trial judge relied on the fact that petitioner's five-month sentence rendered his 1954 conviction a misdemeanor. (Pen. Code, § 17.) When the district attorney indicated that the fact the offense carried a possible felony sentence rendered the offense a felony prior for purposes of Health and Safety Code section 11531 (Health & Saf. Code, § 11533), the judge replied: "That is up to the Adult Authority as long as I leave it in." The judgment recites that petitioner was found guilty of two counts of sale of marijuana, and that he "was previously convicted of a felony in the U.S. District Court and of a misdemeanor in Superior Court, Alameda County, California, both offenses involving Marijuana; . . ." The Court of Appeal affirmed the conviction, rejecting inter alia a contention that the 1954 offense did not qualify as a prior felony. We denied a hearing October 14, 1966.

Petitioner now urges: (1) The 1950 federal conviction must be voided in view of *Leary* v. *United States* (1969) 395 U.S. 6 [23 L.Ed.2d 57, 89 S.Ct. 1532]; (2) the trial judge's insistence that the 1954 offense was a misdemeanor should bind the Adult Authority because Health and Safety Code section 11718 unconstitutionally restricts the power of a trial judge to dismiss priors charged to augment sentence; (3) petitioner's 10-year sentence is unconstitutional in that it is cruel and unusual in its severity; (4) he was prejudiced by the introduction of the priors at his trial; and (5) he was denied the effective assistance of counsel in view of his appointed attorney's admissions of lack of preparation with regard to the 1950 prior.

■ (1) *The 1950 Prior*—Petitioner's 1950 conviction was for violation of a federal statute forbidding any person required to pay the federal Marijuana Transfer Tax (26 U.S.C. § 2590, now § 4741) "to acquire or otherwise obtain any marijuana without having paid such tax" and providing that proof of possession coupled with a failure to produce an order form required of all transferors of marijuana (with some irrelevant exceptions) (26 U.S.C. § 2591, now § 4742) "shall be presumptive evidence of guilt." (26 U.S.C. § 2593(a), now § 4744(a).) Such a conviction constitutes a prior felony for purposes of the habitual narcotics offender statutes (*People* v. *McLean, supra,* 56 Cal.2d 660, 665-666), regardless of the sentence actually imposed (Health & Saf. Code, § 11533).

*Leary* v. *United States, supra,* 395 U.S. 6, held, inter alia, that a timely invocation of the privilege against self-incrimination constitutes a complete defense against a prosecution under section 4474(a) of title 26 of the United States Code. (*Id.,* at pp. 12-29 [23 L.Ed.2d at pp. 67-77].) Noting that Leary was required to have paid the tax at the time of securing the order form required by section 4742 (26 U.S.C. § 4741(b)), that he could have obtained the form only by identifying himself as a transferee of marijuana (and as one who had not paid the occupational tax imposed by sections 4751-4752), that if revealed this information would be conveyed to state and local law enforcement officials by virtue of section 4773, and that all states had laws making possession of marijuana illegal, the Supreme Court reasoned that the statutory scheme "compelled petitioner to expose himself to a 'real and appreciable' risk of self-incrimination, within the meaning of our decisions in *Marchetti, Grosso,* and *Haynes*." (395 U.S. at p. 16 [23 L.Ed.2d at p. 70].)

*Marchetti* v. *United States* (1968) 390 U.S. 39 [19 L.Ed.2d 889, 88 S.Ct. 697], held the Fifth Amendment a complete defense to a prosecution for failure to register and pay the occupational tax on wagers (26 U.S.C. §§ 4411-4412) in view of the availability of lists of wagering taxpayers to state and local prosecutors (*id.,* § 6107), in view of the statutory scheme's concern with a " 'selective group inherently suspect of criminal activities' " (390 U.S. at p. 57 [19 L.Ed.2d at p. 903]), and in view of the " 'real and appreciable' " risk of self-incrimination inherent in compliance (*id.,* at p. 48 [19 L.Ed.2d at p. 898]).

*Grosso* v. *United States* (1968) 390 U.S. 62 [19 L.Ed.2d 906, 88 S.Ct. 709], applied the *Marchetti* rationale to hold the Fifth Amendment a complete defense to a prosecution for nonpayment of the excise tax on proceeds from wagering. (26 U.S.C. § 4401.) *Haynes* v. *United States* (1968) 390 U.S. 85 [19 L.Ed.2d 923, 88 S.Ct. 722], applied the same rationale to hold the Fifth Amendment a complete defense to a prosecu-

tion under the National Firearms Act for possession of an unregistered weapon. (26 U.S.C. §§ 5841, 5851.)

■ It is clear that petitioner could not now be convicted of the same offense for which he was convicted in 1950 (*Leary* v. *United States, supra,* 395 U.S. 6),[1] and that petitioner may now challenge his sentence to the extent that it is augmented by an unconstitutional prior (*In re Dabney,* 71 Cal.2d 1, 4 [76 Cal.Rptr. 636, 452 P.2d 924]; *In re Woods,* 64 Cal.2d 3 [48 Cal.Rptr. 689, 409 P.2d 913]). The questions remaining are whether *Leary* applies retroactively to render the 1950 prior unconstitutional,[2] and, if so, whether the fact the prior was entered on a plea of guilty affects petitioner's right to relief.[3]

■ The retrospective effect of a law-making opinion is to be determined by " '(a) the purpose to be served by the new standards, (b) the extent of the reliance by law enforcement authorities on the old standards, and (c) the effect on the administration of justice of a retroactive application of the new standards.' " (*Desist* v. *United States* (1969) 394 U.S. 244, 249 [22 L.Ed.2d 248, 255, 89 S.Ct. 1030], and cases cited; footnote omitted.) It is also clear that the factors of reliance and burden on the administration of justice are of significant relevance only when the question of retroactivity is a close one after the purpose of the new rule is considered. (*Desist* v. *United States, supra,* 394 U.S. at p. 251 [22 L.Ed.2d at p. 256], and cases cited.)

When the United States Supreme Court's view of the importance of a new rule is borne in mind, that court's retroactivity decisions break down

---

[1]Although *Leary* reversed a conviction under section 4744(a)(2) (transporting or concealing marijuana obtained without paying the tax), and petitioner's conviction was for a violation of the forerunner of section 4744(a)(1) (acquiring marijuana without paying the tax), there is no conceivable basis upon which to distinguish the provisions with regard to the *Leary* rule, and the United States Supreme Court has so held. (*United States* v. *Covington* (1969) 395 U.S. 57, 59-60, fn. 3 [23 L.Ed.2d 94, 98-99, 89 S.Ct. 1559].)

[2]This case concerns only that portion of *Leary* which held the Fifth Amendment a complete defense to a prosecution for obtaining or transporting marijuana without paying the federal tax. *Leary*'s other holding—that the statutory presumption of knowledge of illegal importation from the mere fact of possession violates due process —must be distinguished. We need not now decide whether this holding of *Leary* is retroactive.

[3]It is possible to argue that regardless of the retroactivity of the rule by virtue of which a prior conviction could not now be obtained, "if such a prior conviction serve[s] as the basis of augmented punishment, the right to level . . . a collateral attack on that prior conviction . . . enjoy[s] complete retroactivity." (*In re Dabney, supra,* 71 Cal.2d at p. 4.) Because we have concluded that *Leary* is entitled to retroactive application, we find it unnecessary to decide whether retroactivity of a new rule is essential if that rule is invoked to challenge an earlier conviction charged in pending proceedings to augment sentence.

along consistent lines. Fully retroactive decisions are seen as vindicating a right which is essential to a reliable determination of whether an accused should suffer a penal sanction. *Berger* v. *California* (1969) 393 U.S. 314 [21 L.Ed.2d 508, 89 S.Ct. 540], gave fully retroactive effect to *Barber* v. *Page* (1968) 390 U.S. 719 [20 L.Ed.2d 255, 88 S.Ct. 1318] (a state cannot use preliminary hearing transcript of absent witness' testimony without showing good faith effort to secure his presence at trial), on the theory that precluding cross-examination of a potentially critical witness may have had a significant effect on the integrity of the fact finding process at trial. *Roberts* v. *Russell* (1968) 392 U.S. 293 [20 L.Ed.2d 1100, 88 S.Ct. 1921], applied retroactively *Bruton* v. *United States* (1968) 391 U.S. 123 [20 L.Ed.2d 476, 88 S.Ct. 1620] (the introduction of a jointly tried codefendant's extrajudicial statement implicating the defendant violates the confrontation clause), because a codefendant's admissions might lead to an unreliable determination of guilt or innocence when untested by cross-examination. *Witherspoon* v. *Illinois* (1968) 391 U.S. 510 [20 L.Ed.2d 776, 88 S.Ct. 1770], which forbade trusting the decision between imprisonment and execution to a jury culled of all who harbor doubts concerning the death penalty, applies to final decisions because the previous standards used in jury selection necessarily undermined the integrity of the penalty-determining process. (*Id.*, at p. 523, fn. 22 [20 L.Ed.2d at p. 785].) *Jackson* v. *Denno* (1964) 378 U.S. 368 [12 L.Ed.2d 908, 84 S.Ct. 1774, 1 A.L.R.3d 1205] (an accused has a right to a reliable determination of voluntariness of his confession by a body other than the one which determines his guilt or innocence), applies retroactively because "confessions are likely to be highly persuasive with a jury, and if coerced they may well be untrustworthy by their very nature." (*Johnson* v. *New Jersey* (1966) 384 U.S. 719, 729 [16 L.Ed.2d 882, 889, 86 S.Ct. 1772]; fn. omitted.) *Gideon* v. *Wainwright* (1963) 372 U.S. 335 [9 L.Ed.2d 799, 83 S.Ct. 792, 93 A.L.R.2d 733] (right to counsel at trial), *Hamilton* v. *Alabama* (1961) 368 U.S. 52 [7 L.Ed.2d 114, 82 S.Ct. 157] (counsel at arraignment), and *Douglas* v. *California* (1963) 372 U.S. 353 [9 L.Ed.2d 811, 83 S.Ct. 814] (counsel on appeal), apply retroactively because denial of counsel "must almost invariably deny a fair trial." (*Stovall* v. *Denno* (1967) 388 U.S. 293, 297 [18 L.Ed.2d 1199, 1204, 87 S.Ct. 1967].) Finally, *Griffin* v. *Illinois* (1956) 351 U.S. 12 [100 L.Ed. 891, 76 S.Ct. 585, 55 A.L.R.2d 1055] (denying indigents free transcripts violates equal protection), applies retroactively because of the unreliability of a process which denies appellate review to indigent appellants. (*Desist* v. *United States, supra*, 394 U.S. at p. 250, and fn. 15 [22 L.Ed.2d at p. 255].)

On the other hand, decisions which have been denied retroactive effect are seen as vindicating interests which are collateral to or relatively far

removed from the reliability of the fact-finding process at trial. Thus *Halliday* v. *United States* (1969) 394 U.S. 831 [23 L.Ed.2d 16, 89 S.Ct. 1498], denied retroactive effect to *McCarthy* v. *United States* (1969) 394 U.S. 459 [22 L.Ed.2d 418, 89 S.Ct. 1166] (noncompliance with rule 11 of the Federal Rules of Criminal Procedure entitles a defendant to withdraw his guilty plea) on the theory that *McCarthy*'s purpose was merely to facilitate trial level and collateral determinations of the voluntariness of guilty pleas, and because that case has no bearing on the settled right to assert on collateral review the involuntariness in fact of a plea. *Desist* v. *United States, supra,* 394 U.S. 244, denied retroactive effect to *Katz* v. *United States* (1967) 389 U.S. 347 [19 L.Ed.2d 576, 88 S.Ct. 507] (the Fourth Amendment forbids admission of the fruits of electronic eavesdropping absent prior judicial authorization) because exclusionary rules in search and seizure cases have no bearing on guilt or the reliability of the process by which it is tested. The same reasoning denied retroactive effect to *Lee* v. *Florida* (1968) 392 U.S. 378 [20 L.Ed.2d 1166, 88 S.Ct. 2096] (evidence seized in violation of section 605 of the Federal Communications Act is inadmissible) (*Fuller* v. *Alaska* (1968) 393 U.S. 80 [21 L.Ed.2d 212, 89 S.Ct. 61]), and *Mapp* v. *Ohio* (1961) 367 U.S. 643 [6 L.Ed.2d 1081, 81 S.Ct. 1684, 84 A.L.R.2d 933] (illegally seized evidence is inadmissible) (*Linkletter* v. *Walker* (1965) 381 U.S. 618 [14 L.Ed.2d 601, 85 S.Ct. 1731]). *DeStefano* v. *Woods* (1968) 392 U.S. 631 [20 L.Ed.2d 1308, 88 S.Ct. 2093], denied retroactive effect to *Duncan* v. *Louisiana* (1968) 391 U.S. 145 [20 L.Ed.2d 491, 88 S.Ct. 1444], and *Bloom* v. *Illinois* (1968) 391 U.S. 194 [20 L.Ed.2d 522, 88 S.Ct. 1477] (right to jury trial in serious criminal cases), because although those cases recognized that juries may serve to prevent arbitrariness and repression, they did not rest on any assumption that nonjury trials are more likely than jury trials to be unfair or unreliable. *Stovall* v. *Denno, supra,* 388 U.S. 293, denied retroactivity to *United States* v. *Wade* (1967) 388 U.S. 218 [18 L.Ed.2d 1149, 87 S.Ct. 1926], and *Gilbert* v. *California* (1967) 388 U.S. 263 [18 L.Ed.2d 1178, 87 S.Ct. 1951] (right to counsel at lineup), on the theory that the rule of those cases serves merely to minimize the possibility that lineup procedures will lead to mistaken identifications, and, in view of the availability of collateral relief to test assertions that lineups were unfair *in fact,* retroactivity is not essential—especially since the absence of counsel does not render a lineup unfair per se. *Johnson* v. *New Jersey, supra,* 384 U.S. 719, denied retroactivity to *Miranda* v. *Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974], and *Escobedo* v. *Illinois* (1964) 378 U.S. 478 [12 L.Ed.2d 977, 84 S.Ct. 1758] (statement of accused is inadmissible unless obtained after express advice of rights), because those cases seek to protect the right against self-incrimination with prophylactic measures, while collateral relief is available to test claims that con-

fessions were *in fact* coerced. (See also *Jenkins* v. *Delaware* (1969) 395 U.S. 213 [23 L.Ed.2d 253, 89 S.Ct. 1677].) *Tehan* v. *Shott* (1966) 382 U.S. 406 [15 L.Ed.2d 453, 86 S.Ct. 459], denied retroactive effect to *Griffin* v. *California* (1965) 380 U.S. 609 [14 L.Ed.2d 106, 85 S.Ct. 1229] (comment on accused's failure to testify violates Fifth Amendment), because the *Griffin* rule serves not to protect the innocent from conviction but rather to protect even the guilty against self-incrimination.

This review of federal retroactivity law reveals that the more directly the new rule in question serves to preclude the conviction of innocent persons, the more likely it is that the rule will be afforded retrospective application. Further, if the rule relates to characteristics of the judicial system which are essential to minimizing convictions of the innocent, it will apply retroactively regardless of the reliance of prosecutors on former law, and regardless of the burden which retroactivity will place upon the judicial system.

Lower federal courts have treated the issue of retroactivity as identical in regard to *Leary, Marchetti, Grosso,* and *Haynes,* and have disagreed as to whether these decisions should be given retroactive effect. Panels from five Circuit Courts of Appeals have held one or more of these cases entitled to full retroactivity. *United States* v. *Lucia* (5th Cir. 1969) 416 F.2d 920, applied *Marchetti* and *Grosso* to final convictions on the theory that the objective of the violated statute was improper by virtue of the Fifth Amendment, and, in view of the slight burden threatened by retroactivity, any reliance by prosecutors was outweighed. The court stressed the fact that unlike the petitioner in *Linkletter* v. *Walker, supra,* Lucia stood convicted of an act that the government cannot legitimately punish. *United States* v. *Miller* (4th Cir. 1969) 406 F.2d 1100, accorded *Haynes* retrospective application on the theory that—in contrast to decisions applied prospectively by the United States Supreme Court—such a holding would impose at worst a slight burden upon the administration of justice while reaching the same result on retrial would be virtually impossible. The court in *Miller* also noted that the United States Supreme Court has granted certiorari, vacated, and remanded a final conviction for reconsideration in light of *Haynes.* (*Forgett* v. *United States* (1968) 390 U.S. 203 [19 L.Ed.2d 1033, 88 S.Ct. 898].) *Miller* has been followed in regard to the retroactivity of *Leary* by *Santos* v. *United States* (7th Cir. 1969) 417 F.2d 340, vacated on other grounds (1970) 397 U.S. 46 [25 L.Ed.2d 36, 90 S.Ct. 811], and *Rowell* v. *United States* (8th Cir. 1969) 415 F.2d 300, vacated on other grounds (1970) 397 U.S. 662 [25 L.Ed.2d 642, 90 S.Ct. 1407]. (See also *Ward* v. *United States* (7th Cir. 1969) 420 F.2d 904; *Isaac* v. *United States* (D.S.C. 1968) 293 F.Supp. 1096.)

*Meadows* v. *United States* (9th Cir. 1969) 420 F.2d 795, agrees in

result with *Miller* and *Lucia* in holding *Haynes* retroactive, but on a slightly different theory: Prospectivity is the exception rather than the rule, and should occur only when the new rule effects a policy extrinsic to and not necessarily dispositive of the determination of guilt, or when substantial police reliance would otherwise be disappointed. *Meadows* noted the slight burden of retroactivity, and the fact that the " 'integrity of the . . . process' . . . is no less impugned by [a] conviction for an offense that the United States has no power to punish than by [a] conviction for an offense [the defendant] did not commit."

Panels from three Circuit Courts of Appeal have taken the opposite view. *Graham* v. *United States* (6th Cir. 1969) 407 F.2d 1313, denied retroactive effect to *Marchetti* and *Grosso* on the theory that the purpose of those cases "will be adequately served by applying them largely prospectively (i.e., so as not to require reversal and retrial of cases wherein judgments had become final as of the date of the *Marchetti* and *Grosso* decisions); . . ." (*Id.*, at p. 1315.) *Graham* also cited the reliance of law enforcement authorities on prior law, suggested the impact of retroactivity would be "substantial and adverse" (*id.*), and noted that all cases remanded by the United States Supreme Court for reconsideration in light of *Marchetti* and *Grosso* involved direct appeals. *Graham* was followed without discussion in *McClain* v. *United States* (9th Cir. 1969) 417 F.2d 489, certiorari denied, 397 U.S. 965 [25 L.Ed.2d 257, 90 S.Ct. 996], Black, Harlan, and Brennan, JJ., dissenting. (See also *United States* v. *Scardino* (5th Cir. 1969) 414 F.2d 925; *Decker* v. *United States* (W.D.Ky. 1969) 310 F.Supp. 674; *Rivera-Vargas* v. *United States* (D.Puerto Rico 1969) 307 F.Supp. 1075; *Jones* v. *United States* (C.D.Cal. 1969) 305 F.Supp. 465; *United States* v. *Carlisle* (W.D.Okla. 1969) 303 F.Supp. 627; *Stoney* v. *United States* (E.D.Mo. 1968) 302 F.Supp. 145; *Horton* v. *United States* (D.Conn. 1969) 300 F.Supp. 1332; *Barrett* v. *United States* (D.Minn. 1969) 300 F.Supp. 1060; *Wainwright* v. *United States* (E.D. Tenn. 1968) 289 F. Supp. 820.)

We have concluded that *Lucia* and *Miller* reach the correct result, and that *Graham* is unpersuasive. Initially, it should be noted that *Graham*'s abstract fear of a "substantial and adverse" impact of a holding that *Leary*'s predecessors are retroactive evaporates upon realistic reflection. Since those cases established the principle that the Fifth Amendment is a complete defense to the prosecutions in question, there is no substantial burden upon the administration of justice in the usual sense of costly retrials with stale evidence and forgetful witnesses. (See *In re Dabney, supra,* 71 Cal.2d at p. 10, and cases cited.) To the extent that the concept of burdensome retroactivity connotes the release of hardened criminals (*ibid.*), recognition that *Leary* holds Congress' objective improper and precludes

conviction seems conclusive. Unlike rules which are collateral to the guilt of prisoners convicted of violating statutes of unquestioned validity, the rules in question here deny the propriety of the statutory scheme under which prisoners were convicted.

Moreover, the states are free to give greater retroactive impact to a decision than the federal courts choose to give (*Jenkins* v. *Delaware, supra,* 395 U.S. at p. 222, fn. 10 [23 L.Ed.2d at p. 261]; *Johnson* v. *New Jersey, supra,* 384 U.S. at p. 733 [16 L.Ed.2d at p. 892]), and *Leary* demands retroactivity in California even more than it does in federal courts. This is so because the validity of a conviction now invalid by virtue of *Leary* is likely to arise in state courts only in contexts like the present one: a petitioner who has already served his federal sentence in full, and who is now serving a sentence augmented by a mandatory minimum term by virtue of the federal prior, seeks only an order informing the Adult Authority that its discretion to release the petitioner becomes operative sooner than it would were the prior valid. In state courts, not only will *Leary*'s retroactivity result in no retrials, it will also not necessarily result in the release of criminals. Under some of the statutes, striking a prior will have no effect at all upon the maximum term. (Health & Saf. Code, §§ 11501, 11502, 11502.1, 11531, 11532, 11912, 11913.) Under only one of the narcotics habitual criminal statutes can voiding a prior reduce the maximum sentence below the mandatory minimum sentence with the prior—and then only if two or more priors are struck. (*Id.,* § 11500.) Thus the Adult Authority will almost always retain the discretion to keep a prisoner confined at least as long as the minimum term which would be mandatory assuming the retention of the prior. (*Id.,* §§ 11500.5, 11501, 11502, 11502.1, 11530, 11530.1, 11531, 11532, 11540, 11557, 11910, 11911, 11912, 11913.) In *People* v. *Tenorio, ante,* pp. 89, 95, footnote 2 [89 Cal.Rptr. 249, 473 P.2d 993], we indicated that entertaining petitions for resentencing is not sufficiently burdensome to preclude retroactivity.

Independent support for retroactivity is provided by the United States Supreme Court's per curiam decision in *Forgett* v. *United States, supra,* 390 U.S. 203, vacating a prior denial of certiorari ((1966) 383 U.S. 926 [15 L.Ed.2d 845, 86 S.Ct. 929]) and remanding for further consideration in the light of *Haynes*. Since *Forgett* involved the statutory scheme condemned by *Haynes* (*United States* v. *Forgett* (6th Cir. 1965) 349 F.2d 601), since *Haynes'* rationale was relied upon by *Leary* (395 U.S. at p. 16 [23 L.Ed.2d at p. 70]), and since it is extremely unlikely that the court gave *Haynes* retroactive effect by inadvertence (cf. *Johnson* v. *New Jersey, supra,* 384 U.S. at p. 732 [16 L.Ed.2d at p. 891]), *Forgett* alone is persuasive authority that *Leary* must be given totally retroactive force.

Finally, *Leary*'s purpose strongly militates in favor of retroactivity, and this factor often is conclusive even if there is a considerable burden on the administration of justice. (*Desist* v. *United States, supra,* 394 U.S. at p. 251 [22 L.Ed.2d at p. 256]; *Roberts* v. *Russell, supra,* 392 U.S. at p. 295 [20 L.Ed.2d at p. 1102]; *Witherspoon* v. *Illinois, supra,* 391 U.S. at p. 523, fn. 22 [20 L.Ed.2d at p. 785].)

Unlike *Tehan* v. *Shott, supra,* 382 U.S. 406, which held the no-comment rule of *Griffin* v. *California, supra,* prospective because the Fifth Amendment in that context had no direct relation to the accuracy of a determination of guilt, the question before us—whether *Leary* should be retroactive—involves the question of guilt and innocence as well as Fifth Amendment values which are collateral to guilt. By establishing a complete defense to prosecutions under the relevant statutes—precisely the legal effect of decisions declaring statutes unconstitutional per se—*Leary* has held, in essence, that persons who make a timely assertion of the Fifth Amendment as a defense are innocent as a matter of law. And, as with decisions holding statutes unconstitutional per se, the fact that the constitutional policy invalidating a statute would not preclude another and different statute prohibiting some conduct of the defendant has no bearing on the innocence established by the constitutional defense. Thus, even though Congress may have the power to punish mere possession of marijuana, its lack of power to do so under the statutory scheme involved in *Leary* renders Leary just as innocent as a person convicted under a constitutionally overbroad statute in the First Amendment area, and just as innocent—under our system of justice—as a person convicted by evidence which is insufficient as a matter of law. If, as we have held in *In re Bell,* 19 Cal.2d 488 [122 P.2d 22], a conviction may be collaterally attacked because it is based on an unconstitutional statute, there is no reason to forbid such attacks when convictions are based upon statutes as to which the Constitution affords a complete defense.

The overwhelming concern of recent retroactivity decisions with the relation of the rule in question to the reliability of the truth-determining process at trial is but a corollary to the ultimate test of the integrity of the judicial process: its capacity to ensure the acquittal of the innocent. Since, under our system of justice, the significance of innocence does not vary with its legal cause, the present petitioner is as entitled to a retroactive application of *Leary* as others are entitled to a retrospective right to trial counsel—counsel whose job it is to search for legal as well as factual defenses for those accused of crime.

 Thus, we have concluded that California must give fully retroactive effect to *Leary*'s holding that a timely invocation of the privilege against self-incrimination constitutes a complete defense to a prosecution such as the one which resulted in petitioner's 1950 prior.

The final question with regard to the 1950 prior is that left open by *In re Caffey,* 68 Cal.2d 762, 766-767 and footnote 5 [69 Cal.Rptr. 93, 441 P.2d 933]: "whether petitioner may properly assert the privilege against self-incrimination on habeas corpus following a plea of guilty at trial." (Fn. omitted.) In a recent decision, the United States Supreme Court has held that the failure of a defendant to anticipate subsequent developments in the law which would have strengthened his case "does not impugn the truth or reliability of his plea. We find no requirement in the Constitution that a defendant must be permitted to disown his solemn admissions in open court that he committed the act with which he is charged simply because it later develops that the State would have had a weaker case than the defendant had thought or that the maximum penalty then assumed applicable has been held inapplicable in subsequent judicial decisions." (*Brady* v. *United States* (1970) 397 U.S. 742, 757 [25 L.Ed.2d 747, 761, 90 S.Ct. 1463, 1473-1474]; see also *McMann* v. *Richardson* (1970) 397 U.S. 759, 769 [25 L.Ed.2d 763, 772, 90 S.Ct. 1441, 1450].)

We need not decide whether *Brady* and *McMann* alter California standards with regard to guilty pleas, for it is clear that the principle of those cases cannot reasonably extend to situations in which a petitioner's right to relief does not depend upon impugning the truth of solemn admissions implicit in such a plea. ■ Thus, an inmate convicted of violating a statute subsequently declared unconstitutional is entitled to relief regardless of the finality with which he conceded its violation. "An unconstitutional law is void, and is as no law. An offence created by it is not a crime. A conviction under it is not merely erroneous, but is illegal and void, and cannot be a legal cause of imprisonment. It is true, if no writ of error lies, the judgment may be final, in the sense that there may be no means of reversing it. But personal liberty is of so great moment in the eye of the law that the judgment of an inferior court affecting it is not deemed so conclusive but that . . . the question of the court's authority to try and imprison the party may be reviewed on *habeas corpus.* . . ." (*Ex parte Siebold* (1880) 100 U.S. 371, 376-377 [25 L.Ed. 717, 719], quoted in *Fay* v. *Noia* (1963) 372 U.S. 391, 408-409 [9 L.Ed.2d 837, 850-851, 83 S.Ct. 822].) Specifically, the self-incrimination waiver inherent in petitioner's 1950 guilty plea has no more relevance to his right to contest the validity of that prior than the waiver implied by the incriminating testimony freely given by the defendant in *Leary*: "The aspect of the self-incrimination privilege which was involved in *Marchetti,* and which petitioner asserts here, is not the undoubted right of an accused to remain silent at trial. It is instead the right not to be criminally liable for one's previous failure to obey a statute which required an incriminatory act. Thus, petitioner is not asserting that he had a right to stand mute at his trial but that he cannot

be convicted for having failed to comply with the transfer provisions of the Act at the time he acquired marihuana in 1965. His admission at trial that he had indeed failed to comply with the statute was perfectly consistent with the claim that that omission was excused by the privilege. Hence, it could not amount to a waiver of that claim." (395 U.S. at p. 28 [23 L.Ed.2d at p. 77].) Moreover, noting that Leary's trial "occurred before our decisions in *Marchetti, Grosso,* and *Haynes,* [when] the Court of Appeals for the Fifth Circuit had recently rejected an identical self-incrimination claim . . . ," the Supreme Court concluded: "Although it would have been preferable for petitioner to have asserted the privilege at trial, we hold that in the circumstances of this case his failure to raise the issue at that time did not amount to a waiver of the privilege. See *Grosso* v. *United States,* 390 U.S. 62, 70-71 (1968)." (*Id.,* at pp. 27-28 [23 L.Ed.2d at p. 77].)

It is therefore evident from *Leary* itself that neither a guilty plea nor a mere failure to raise the privilege against self-incrimination prior to *Marchetti, Grosso,* and *Haynes* will preclude a prior attack on a final conviction invalid under those decisions. (See also *Meadows* v. *United States, supra,* 420 F.2d 795; *United States* v. *Miller, supra,* 406 F.2d 1100; *Shoffeitt* v. *United States* (5th Cir. 1968) 403 F.2d 991, cert. denied (1969) 393 U.S. 1084 [21 L.Ed.2d 777, 89 S.Ct. 868]; *Drennon* v. *United States* (8th Cir. 1968) 393 F.2d 342.) Under the circumstances, we find unpersuasive two federal cases to the contrary, *Sepulveda* v. *United States* (10th Cir. 1969) 415 F.2d 321, and *Gillespie* v. *United States* (7th Cir. 1969) 409 F.2d 511.)

■ Thus we have concluded that *Leary* v. *United States, supra,* 395 U.S. 6, is retroactive to the extent that a petitioner suffering a sentence augmented by a prior conviction as to which *Leary* established a complete defense may attack that prior conviction collaterally, and that the right to such an attack is not waived either by a failure to assert the defense against self-incrimination or by a guilty plea prior to the decision in that case. (*In re Dabney, supra,* 71 Cal.2d at pp. 11-12; *In re Caffey, supra,* 68 Cal.2d at p. 773, fn. 10; *In re Woods, supra,* 64 Cal.2d at pp. 7-8.)

■ (2) *The 1954 Prior*—Our recent decision in *People* v. *Tenorio, ante,* p. 89 [89 Cal.Rptr. 249, 473 P.2d 993] holds unconstitutional section 11718 of the Health and Safety Code, and entitles petitioner to a determination by the sentencing court whether to dismiss the 1954 prior in its discretion untrammeled by that section. Although the trial judge's insistence in the face of section 11533 that the 1954 prior was a misdemeanor prior implies an intention to ameliorate the effect of that prior,[4]

---

[4]Since petitioner was sentenced before our decision in *Tenorio,* the sentencing judge could not have been aware that the restrictions section 11718 placed on his discretion

it is for the sentencing court to choose between dismissing the prior or letting it stand as a felony prior.

(3) *Cruel and Unusual Punishment*—Inasmuch as our decision removes the effect of the 1950 prior from petitioner's mandatory minimum sentence under section 11531 of the Health and Safety Code (by reducing that minimum from 10 to 5 years), and inasmuch as he may obtain a discretionary dismissal of the 1954 prior from the sentencing court, we need not now reach petitioner's contention that he is suffering unconstitutionally excessive punishment. (Cf. *People* v. *Clark, ante,* p. 97 [89 Cal.Rptr. 253, 473 P.2d 997].)

(4) *Introduction of the Priors*—Petitioner's claim that he was prejudiced by the introduction of his two priors before he was convicted is based upon *Spencer* v. *Texas* (1967) 385 U.S. 554 [17 L.Ed.2d 606, 87 S.Ct. 648], and *In re Dabney, supra,* 71 Cal.2d 1. "The Supreme Court . . . recognized in *Spencer* . . . the danger of prejudice resulting from the introduction of valid prior convictions. That court recognized that *jurors* ordinarily will more readily find an accused guilty if they believe he has suffered a previous conviction." (*Id.,* at p. 7; italics added.) The rationale of *Spencer* and *Dabney* has no significant application to priors introduced, as in the instant case, solely for sentencing purposes in a nonjury trial. ■ Since petitioner was convicted by a judge sitting without a jury and the priors were not used for impeachment purposes, and since we must presume the judge properly disregarded the priors in determining petitioner's guilt, the fact that the judge was aware of the priors before convicting petitioner has no bearing on the validity of the conviction.

(5) *Right to Effective Counsel*—Petitioner's claim that he was denied effective counsel relates solely to his attorney's apparent failure to research the question of whether the federal tax offense constituted a prior for purposes of Health and Safety Code section 11531. ■ " 'It is counsel's duty to investigate carefully all defenses of fact and of law that may be available to the defendant, and if his failure to do so results in withdrawing a crucial defense from the case, the defendant has not had the assistance to which he is entitled.' (*People* v. *Ibarra* (1963) *supra,* 60 Cal.2d 460, 464 [34 Cal.Rptr. 863, 386 P.2d 487], and cases cited.)" (*People* v. *McDowell,* 69 Cal.2d 737, 746 [73 Cal.Rptr. 1, 447 P.2d 97].) ■ Both section 11531 (sale of marijuana) and section 11530 (possession of marijuana)

---

were void. Petitioner contends, in essence, that those restrictions account for the judge's insistence that the offense was a misdemeanor in spite of the express provision of section 11533 of the Health and Safety Code that any prior narcotics conviction which could have been punished as a felony constitutes a felony prior regardless of the sentence actually imposed. Until and unless petitioner obtains a dismissal of his 1954 prior, it will remain a felony prior.

provide for aggravation of punishment for persons "previously convicted . . . of any offense under the laws of any other state or of the United States which if committed in this State would have been punishable as a felony offense described in this division. . . ." *People* v. *McLean, supra,* 56 Cal.2d 660, 665-666, was cited to the trial court by the prosecutor, and expressly holds that a conviction under the federal Marijuana Tax Act (26 U.S.C. § 2593(a), now § 4744(a)) constitutes a prior felony for section 11530. There is no basis on which to distinguish section 11531 in this respect. *Leary* v. *United States, supra,* 395 U.S. 6, was not decided until several years after petitioner's conviction. Defense counsel's lack of research did not result "in withdrawing a crucial defense," and petitioner has not shown a violation of his right to effective counsel.

In sum, petitioner is entitled to be relieved of the effect of the 1950 prior and to the exercise of the sentencing court's discretion as to whether to strike the 1954 prior.

The writ is granted, and petitioner is remanded to the Superior Court of the County of San Diego for further proceedings in accordance with the views expressed herein.[5]

Tobriner, J., Mosk, J., Sullivan, J., and Peek, J.,* concurred.

McComb, Acting C. J., and Burke, J., concurred in the judgment.

---

[5]As we indicated in *Tenorio,* petitions for a discretionary dismissal of a prior narcotics conviction are to be filed with the superor court with territorial jurisdiction for transfer to the sentencing court. Petitioner in the instant case sought relief here before we decided *Tenorio.*

Future petitions challenging a prior federal narcotics conviction under section 4744 of title 26 of the United States Code (or its predecessor) should be filed with the superior court with territorial jurisdiction. Whenever such a petition would, if meritorious, render an inmate eligible for probation, and whenever such a petition also seeks a discretionary dismissal under *Tenorio,* the case should be transferred to the sentencing court. In other cases, the court with territorial jurisdiction should dispose of the case by striking any prior which is invalid under *Leary.*

*Retired Associate Justice of the Supreme Court sitting under assignment by the Acting Chairman of the Judicial Council.