277 So.2d 389

James M. **SCOPOLITES**

v.

**STATE.**

**I Div. I89.**

Court of Criminal Appeals of Alabama.

Feb. 6, 1973.

Rehearing Denied April 3, 1973.

William J. Baxley, Atty. Gen., and Richard F. Calhoun, Asst. Atty. Gen., for the State.

Don Conway, Mobile, for appellant.

CATES, Presiding Judge.

Possession of marijuana: sentence, eight years in the penitentiary, Code 1940, T. 22, § 256, as amended by Act 625, August 29, 1969.

I

In brief appellant urges us to declare Act 1191, September 13, 1969 unconstitutional.

■ We reject this contention for two reasons. First, because the question was not presented to the trial court. Second, because the Act, which assimilates into the circuit court the juvenile court in counties having between 300,000 and 500,000 inhabitants, is within the power of the Legislature.

In Dudley v. Birmingham Rly. Lt. & Power Co., 139 Ala. 453, 36 So. 700, we find:

"* * * It is a question proper for legislative consideration and determination, and we feel assurance of conservative and correct decision in leaving it to the Legislature, where it has been dealt with throughout the history of the state. The general plenary power of the Legislature has not been hampered or limited in this connection by the Constitution, * * *."

See also, State ex rel. Vandiver v. Burke, 175 Ala. 561, 57 So. 870.

■ It follows that the additional circuit judge whose office is authorized by said Act 1191 is capable of performing any of the duties of a circuit judge.

## II

■ Appellant, on April 23, 1971, moved the circuit court to order the State to produce the seized substance for it to be analyzed chemically. On May 3 Judge Hocklander granted the motion.

In Jenkins v. State, 46 Ala.App. 719, 248 So.2d 758, we wrote:

"Based on the appellate records of marijuana trials brought to this court we know that, except in case of the defendant's admission, the practice of the prosecution has been to produce either a chemical analysis or the opinion of a witness who has seen or studied marijuana. Hence we conclude that this is a realm requiring opinion evidence. See

Cano v. State, Tex.Cr.App., 450 S.W.2d 646; State v. Emmett, Wash., 463 P.2d 609 (h. n. 5); People v. McLean, 56 Cal. 2d 660, 16 Cal.Rptr. 347, 365 P.2d 403; Miller v. State, 168 Tex.Cr.R. 570, 330 S.W.2d 466."

Hence, Judge Hocklander's order was a correct ruling on the motion.

■ The case on the same day went to Judge Strickland for trial. Defendant moved as follows:

"Judge, I would like to make a motion for continuance. I don't think the Defendant has been given such information as needed in order to prepare my case. I object. I'm not ready to try this case, but I'm here and I'll do the best I can."

We do not consider that this oral motion in any way apprised Judge Strickland that Judge Hocklander had granted the motion to produce nor, more importantly, that the defendant wanted time for a chemical analysis. There was no error in denying the instant motion for continuance.

## III

After the jury returned their verdict the record shows the following:

"COURT: Is there any request, Mr. Conway?

"MR. CONWAY: Yes, I would like to ask for a probationary report.

"MR. CLAY: Judge, in addition to the charge of forgery he had other narcotic charges in California which were dismissed and was charged with robbery about six years ago, and I would object to any probation.

"COURT: In addition to that information given to me by Mr. Clay, I am familiar with Mr. Scopolites through Juvenile Court and will deny your request for probation. Mr. Scopolites, do you have anything to say as to why sentence

of law should not be now passed on you?

"DEFENDANT: No.

"COURT: I sentence you to eight years in the State Penitentiary."

Whatever might be said for or against the use of mere accusations (contrasted with convictions) of former offenses yet we must adhere to the language of our Supreme Court. In Goolsby v. State, 283 Ala. 269, 215 So.2d 602, we find:

"The trial court, in certain offenses, has the prerogative to assess punishment within the legal limits, as sound discretion should dictate. Yates v. State, 31 Ala.App. 362, 17 So.2d 776, cert. den. 245 Ala. 490, 17 So.2d 777; 7 Ala.Digest, Criminal Law, § 1208(2).

"Our appellate court should not usurp or invade the discretionary authority of the trial court in fixing punishment, within lawful limits, * * *."

In Townsend v. Burke, 334 U.S. 736, 68 S.Ct. 1252, 92 L.Ed. 1690, we find (where unlike Scopolites, Townsend was not attended by counsel):

"The proceedings as to this petitioner, following his plea of guilty, consisted of a recital by an officer of details of the crimes to which petitioner and others had pleaded guilty and of the following action by the court: [Italics supplied].

" 'By the Court (addressing Townsend):

" 'Q. Townsend, how old are you?

" 'A. 29.

" 'Q. You have been here before, haven't you?

" 'A. Yes, sir.

" 'Q. *1933, larceny of automobile.* 1934, larceny of produce. 1930, larceny of bicycle. 1931, entering to steal and larceny. *1938, entering to steal and larceny in Doylestown.* Were you tried up there? No, no. Arrested in Doylestown. That was up on Germantown Avenue, wasn't it? You robbed a paint store.

" 'A. No. That was my brother.

" 'Q. You were tried for it, weren't you?

" 'A. Yes, but I was not guilty.

" 'Q. And 1945, this. 1936, entering to steal and larceny, 1350 Ridge Avenue. Is that your brother too?

" 'A. No.

" 'Q. *1937, receiving stolen goods, a saxophone.* What did you want with a saxophone? Didn't hope to play in the prison band then, did you?

" 'The Court: Ten to twenty in the Penitentiary.'

"The trial court's facetiousness casts a somewhat somber reflection on the fairness of the proceeding when we learn from the record that actually the charge of receiving the stolen saxophone had been dismissed and the prisoner discharged by the magistrate. *But it savors of foul play or of carelessness when we find from the record that, on two other of the charges which the court recited against the defendant, he had also been found not guilty.* Both the 1933 charge of larceny of an automobile, and the 1938 charge of entry to steal and larceny, resulted in his discharge after he was adjudged not guilty. We are not at liberty to assume that items given such emphasis by the sentencing court, did not influence the sentence which the prisoner is now serving.

"We believe that on the record before us, it is evident that this uncounseled defendant was either overreached by the prosecution's submission of misinforma-

tion to the court or was prejudiced by the court's own misreading of the record. Counsel, had any been present, would have been under a duty to prevent the court from proceeding on such false assumptions and perhaps under a duty to seek remedy elsewhere if they persisted. Consequently, on this record we conclude that, while disadvantaged by lack of counsel, this prisoner was sentenced on the basis of assumptions concerning his criminal record which were materially untrue. Such a result, whether caused by carelessness or design, is inconsistent with due process of law, and such a conviction cannot stand." Italics added.

Mr. Justice Black for the majority in Williams v. New York, 337 U.S. 241, 69 S.Ct. 1079, 93 L.Ed. 397, wrote:

"About five weeks after the verdict of guilty with recommendation of life imprisonment, and after a statutory presentence investigation report to the judge, the defendant was brought to court to be sentenced. Asked what he had to say, appellant protested his innocence. After each of his three lawyers had appealed to the court to accept the jury's recommendation of a life sentence, the judge gave reasons why he felt that the death sentence should be imposed. He narrated the shocking details of the crime as shown by the trial evidence, expressing his own complete belief in appellant's guilt. He stated that the presentence investigation revealed many material facts concerning appellant's background which though relevant to the question of punishment could not properly have been brought to the attention of the jury in its consideration of the question of guilt. He referred to the experience appellant 'had had on thirty other burglaries in and about the same vicinity' where the murder had been committed. The appellant had not been convicted of these burglaries although the judge had information that he had confessed to some and had been identified as the per-

petrator of some of the others. The judge also referred to certain activities of appellant as shown by the probation report that indicated appellant possessed 'a morbid sexuality' and classified him as a 'menace to society.' *The accuracy of the statements made by the judge as to appellant's background and past practices were not challenged by appellant or his counsel, nor was the judge asked to disregard any of them or to afford appellant a chance to refute or discredit any of them by cross-examination or otherwise.*

"The case presents a serious and difficult question. The question relates to the rules of evidence applicable to the manner in which a judge may obtain information to guide him in the imposition of sentence upon an already convicted defendant. Within limits fixed by statutes, New York judges are given a broad discretion to decide the type and extent of punishment for convicted defendants. Here, for example, the judge's discretion was to sentence to life imprisonment or death. To aid a judge in exercising this discretion intelligently the New York procedural policy encourages him to consider information about the convicted person's past life, health, habits, conduct, and mental and moral propensities. The sentencing judge may consider such information even though obtained outside the courtroom from persons whom a defendant has not been permitted to confront or cross-examine. It is the consideration of information obtained by a sentencing judge in this manner that is the basis for appellant's broad constitutional challenge to the New York statutory policy."

\*　　\*　　\*　　\*　　\*　　\*

"The considerations we have set out admonish us against treating the due-process clause as a uniform command that courts throughout the Nation abandon their age-old practice of seeking information from out-of-court sources to

guide their judgment toward a more enlightened and just sentence. New York criminal statutes set wide limits for maximum and minimum sentences. Under New York statutes a state judge cannot escape his grave responsibility of fixing sentence. In determining whether a defendant shall receive a one-year minimum or a twenty-year maximum sentence, we do not think the Federal Constitution restricts the view of the sentencing judge to the information received in open court. The due-process clause should not be treated as a device for freezing the evidential procedure of sentencing in the mold of trial procedure. So to treat the due-process clause would hinder if not preclude all courts —state and federal—from making progressive efforts to improve the administration of criminal justice." Italics added.

Very few appellate courts in this country have authority to review the suitability of a sentence. Burr, Appellate Review, as a Means of Controlling Criminal Sentencing, 33 U.Pitt.L.R. 1. Moreover, as the author of that article points out, few legislatures have articulated standards to guide trial judges in the task of imposing sentence.

■ The prosecutor's references to narcotics cases on which the accused was not convicted partook of the rebuked approach in Townsend v. Burke, supra. However, Scopolites was throughout attended by counsel. This attorney had vigorously accused the judge of bias arising out of a political campaign. We do not think that the appellant was left naked to the prosecutor's characterization. Defense counsel, ready at other times to object, here chose to remain silent. We treat his silence as a waiver. Henry v. Mississippi, 379 U.S. 443, 448, 85 S.Ct. 564, 13 L.Ed.2d 408 et seq.

A Ninth Circuit case per Duniway, J., United States v. Weston, 448 F.2d 626, contains superficially a critical resemblance to the one of concern here. There was laid before the trial judge a report of the Federal drug bureau. This report gave as the writer's opinion that the defendant was the leading heroin supplier in Western Washington. No corroborating circumstances were set out; indeed the report used the intuitive expression, "felt." Appellant Weston denied the truth of the accusation.

The opinion distinguishes the hearsay-on-sentencing approved in Williams v. New York, supra, saying:

"* * * A number of courts, including this court, have frequently cited *Williams* for the general proposition that *evidence of other criminal conduct not resulting in a conviction may be considered in imposing sentence*. We have done so a number of times: See United States v. English, 9 Cir., 1970, 421 F.2d 133 (dictum); Austin v. United States, 9 Cir., 1969, 408 F.2d 808; Ward v. California, 9 Cir. 1959, 269 F.2d 906; Taylor v. United States, 9 Cir., 1950, 179 F.2d 640. None, however, is inconsistent in its actual holding with the result we reach here. Other circuits have done the same. See Jones v. United States, 1962, 113 U.S.App.D.C. 233, 307 F.2d 190; United States v. Doyle, 2 Cir., 1965, 348 F.2d 715, 720-722; United States v. Cifarelli, 2 Cir., 1968, 401 F.2d 512, 514; United States v. Marcello, 5 Cir., 1970, 423 F.2d 993, 1013; United States v. Onesti, 7 Cir., 1969, 411 F.2d 783; United States ex rel. Long v. Pate, 7 Cir., 1969, 418 F.2d 1028. We would not repudiate this rule if we could. We do not desire to transform the sentencing process into a second trial, and we believe that other criminal conduct may properly be considered, even though the defendant was never charged with it or convicted of it. Its relevance to the problem before the judge, 'what sort of person is this defendant, and what sort of sentence should she receive?' is apparent. But

that does not solve our present problem. Here the other criminal conduct charged was very serious, and the factual basis for believing the charge was almost nil. It rested upon only two things: the opinion of unidentified personnel in the Bureau of Narcotics and Dangerous Drugs, and the unsworn statement of one agent that an informer had given him some information lending partial support to the charge." Italics added.

■ In the case sub judice the two California narcotics charges were not denied by Scopolites. Presumably, they were matters of public record[1] somewhere in that state. The fact that somewhere in the judicial process the charges were dismissed does not wipe out the fact that two offenses were charged. Dismissal removed only either conviction or acquittal as the outcome.

The statement was neither misleading nor false[2]. Hence, Townsend v. Burke, supra, does not apply. The juvenile court record was appropriate to notice in the sentencing process. United States v. Myers, 3 Cir., 374 F.2d 707. No claim brings the California charges under Tucker v. United States, 404 U.S. 443, 92 S.Ct. 589, 30 L.Ed.2d 592.

■ That shortly after this trial our Legislature reduced the penalty for possession of marihuana for personal use to a misdemeanor may be good ground for the Pardon and Parole board to review this conviction. However, it confers no power of mitigation on this court.

We have reviewed the record under Code 1940, T. 15, § 389, and consider that the judgment below is due to be

Affirmed.

All the Judges concur.

1. See Buchea v. Sullivan, Or., 497 P.2d 1169.

2. See Crowe v. State, S.D., 194 N.W.2d 234; United States v. Janiec, 3 Cir., 464

F.2d 126; Verdugo v. United States, 9 Cir., 402 F.2d 599 (illegal evidence).