Filed 6/5/20

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| In re STEVEN L. HADEN,<br><br>    on Habeas Corpus. | A158376<br><br>(San Mateo County<br>Super. Ct. No. SC042504) |

In *People v. Gallardo* (2017) 4 Cal.5th 120 (*Gallardo*), our Supreme Court disapproved its prior decision in *People v. McGee* (2006) 38 Cal.4th 682, (*McGee*) and held that a trial court considering whether to impose a sentence enhancement based on a defendant's prior conviction may not make factual findings about the defendant's conduct to impose the enhancement. Petitioner Steven L. Haden sought habeas relief in the Supreme Court based on *Gallardo*, claiming that in 1999 the trial court treated two North Dakota robbery convictions as strikes in contravention of *Gallardo*'s holding. The Supreme Court issued an order to show cause returnable to this court to decide whether Haden is entitled to relief under *Gallardo*, and whether *Gallardo* applies retroactively to final convictions.

Recently, in *In re Milton* (2019) 42 Cal.App.5th 977 (*Milton*), the Second District Court of Appeal, in a thorough analysis of the retroactivity issue, held *Gallardo* does not apply retroactively to final convictions. We agree with *Milton*. Because *Gallardo* does not apply retroactively to Haden's conviction, which became final almost 20 years ago, we need not determine whether he would be entitled to relief under that decision, and we will deny his petition.

1

## BACKGROUND

In 1998, Haden pleaded no contest to infliction of corporal injury on a spouse (Pen. Code, § 273.5, subd. (a))[1] and admitted a special allegation of personal use of a deadly weapon (former § 1192.7, subd. (c)(23)). After the plea, the trial court held a court trial on the special allegation that, under the Three Strikes Law (see §§ 667, 1170.12, subd. (c)(2)), petitioner suffered two prior strikes based on two robbery convictions in North Dakota. The court found the special allegations true and sentenced petitioner to 25 years to life in prison.

Haden appealed, arguing the North Dakota robbery convictions could not constitute strikes for sentencing purposes. We rejected Haden's argument and affirmed the conviction. (*People v. Haden* (Jan. 25, 2000, A086575) [nonpub. opn.].) Although the elements of robbery under North Dakota law differed from those under California law, so that it could not be determined from mere fact of conviction that Haden had committed strikes under California law, we explained that it was reasonable for the trial court to determine from the record in Haden's North Dakota cases that the two robberies "were the equivalent of California robberies." (*Ibid.*) The Supreme Court denied Haden's petition for review (May 10, 2000, S086458).

Over the next 15 years, Haden sought habeas relief on several occasions, both in the trial court and in this court. He was denied relief each time.

In October 2015, Haden filed another habeas petition in this court (A146612), arguing that under the United States Supreme Court's then-recent decision in *Descamps v. United States* (2013) 570 U.S. 254 (*Descamps*),

---

[1] Unless otherwise noted, all statutory references are to the Penal Code.

the trial court made improper factual findings when treating the North Dakota convictions as strikes. We denied the petition after concluding *Descamps* "does not apply retroactively to this case which has been final for more than a decade."

Haden then sought habeas relief in the Supreme Court (S230939), arguing that the North Dakota robbery convictions did not qualify as strikes under *Descamps*. In March of 2016, the Supreme Court denied the petition "without prejudice to any relief to which petitioner might be entitled after this court decides *People v. Gallardo*, S231260."

The Supreme Court issued its opinion in *Gallardo, supra,* 4 Cal.5th 120 on December 21, 2017. Disapproving its prior decision in *People v. McGee, supra,* 38 Cal.4th 682, the Supreme Court held a "court considering whether to impose an increased sentence based on a prior qualifying conviction may not determine the 'nature or basis' of the prior conviction based on its independent conclusions about what facts or conduct 'realistically' supported the conviction." (*Gallardo*, at p. 136.) Such an inquiry, the court explained, violates a defendant's Sixth Amendment right to a jury trial because it "invades the jury's province by permitting the court to make disputed findings about 'what a trial showed, or a plea proceeding revealed, about the defendant's underlying conduct.' " (*Ibid.*) "The court's role is, rather, limited to identifying those facts that were established by virtue of the conviction itself—that is, facts the jury was necessarily required to find to render a guilty verdict, or that the defendant admitted as the factual basis for a guilty plea." (*Ibid.*)

On May 7, 2018, Haden filed the instant petition for writ of habeas corpus in the Supreme Court (S248706). He argued the trial court's imposition of the North Dakota robberies as strikes in 1998 contravened

3

*Gallardo* because the court examined the record from the North Dakota cases to determine the factual nature of the prior convictions. After the Attorney General submitted an informal response, the Supreme Court transferred the petition to this court with the following order: "The Secretary of the Department of Corrections and Rehabilitation is ordered to show cause returnable before the Court of Appeal, First Appellate District, Division Four, when the matter is placed on calendar, why petitioner is not entitled to relief pursuant to *People v. Gallardo* (2017) 4 Cal.5th 120, and why *Gallardo* should not apply retroactively on habeas corpus to final judgments of conviction." The Attorney General has filed a return opposing Haden's petition, and Haden, through appointed counsel, has filed a traverse. The matter is now before us for decision.

## DISCUSSION

Haden argues that *Gallardo* should apply retroactively even though his conviction was final at the time *Gallardo* was decided. The retroactivity issue was carefully considered in *Milton,* under circumstances similar in all relevant respects to the situation here. The Second Appellate District's recent opinion in that case analyzes the issue at length, and we see no reason to repeat that analysis here. Haden contends that *Milton* was wrongly decided and should not be followed, but each of his arguments was considered and rejected in that opinion. We agree with the analysis and conclusions of the Second Appellate District and, like the Fourth Appellate District, follow its lead in holding that *Gallardo* does not apply retroactively to final convictions. (See *In re Scott* (June 4, 2020, D076909) ___ Cal.App.5th ___ [2020 Cal.App. Lexis 486, at p. *2] [following *Milton* and holding *Gallardo* does not apply retroactively to final convictions].)

4

As the court in *Milton* explained, California courts generally apply two separate tests—one federal and one state—when deciding whether new constitutional rules of criminal procedure apply retroactively to final convictions.  (*Milton, supra,* 42 Cal.App.5th at pp. 988-989.)  The court began its analysis under the federal standard derived from *Teague v. Lane* (1989) 489 U.S. 288.  Under *Teague,* " 'as a general matter, "new constitutional rules of criminal procedure will not be applicable to those cases which have become final before the new rules are announced." ' " (*Milton, supra,* at p. 988.) " '*Teague* and its progeny recognize two categories of decisions that fall outside this general bar on retroactivity for procedural rules.  First, "[n]ew *substantive* rules generally apply retroactively."  [Citations.]  Second, new " 'watershed rules of criminal procedure,' " which are procedural rules "implicating the fundamental fairness and accuracy of the criminal proceeding," will also have retroactive effect.' " (*Id.* at p. 989.)

The *Milton* court then concluded *Gallardo* is not retroactive under the federal standard.  The court began its analysis by explaining why *Gallardo* established a new rule under federal law and was not merely an extension of *Apprendi v. New Jersey* (2000) 530 U.S. 466 (*Apprendi*).  (*Milton, supra,* 42 Cal.App.5th at p. 990.)  *Gallardo* "did not merely apply the holding of *Apprendi* to the recidivist sentencing scheme in California." (*Milton,* at p. 991.)  Instead, *Gallardo* "drew heavily on *Descamps*[*, supra,* 570 U.S. 254] and *Mathis* [*v. United States* (2016) ___ U.S. ___ [136 S.Ct. 2243] in holding a jury must find the facts that support increased punishment based on recidivism." (*Milton,* at p. 991.)

Next, the *Milton* court explained that the new rule from *Gallardo* is procedural, not substantive, "because it prescribes the manner of finding facts to increase the defendant's sentence." (*Milton, supra,* 42 Cal.App.5th at

5

p. 992.)  "Before *Gallardo*, the trial court, as authorized by *McGee*, could examine the entire record of conviction to determine the 'nature or basis' of the prior conviction based on its independent conclusion.  [Citation.]  After *Gallardo*, the trial court can only look at a subset of this record, namely, facts that 'the jury was necessarily required to find to render a guilty verdict, or that the defendant admitted as the factual basis for a guilty plea.' "  (*Milton,* at p. 992.)

Finally, the *Milton* court determined that "*Gallardo*, though significant, was not a watershed rule of criminal procedure because limiting the role of the trial court and the scope of what the court may review and consider to impose an increased sentence is not a rule ' "without which the likelihood of an accurate conviction is seriously diminished." ' "  (*Milton, supra,* 42 Cal.App.5th at p. 994.)  "[T]he California Supreme Court did not reach this conclusion because a sentencing court's factfinding, or the kind of evidence sentencing courts used to consider in connection with that factfinding, was somehow inaccurate or unreliable.  Rather, the California Supreme Court in *Gallardo* limited the role of the sentencing court in imposing increased sentences and the materials the sentencing court can consider to protect the defendant's Sixth Amendment jury trial right." (*Milton,* at p. 995.)  Having concluded that *Gallardo* announced a procedural rule that fell short of being a "watershed rule of criminal procedure," the court in *Milton* concluded that under the federal standard *Gallardo* does not apply retroactively to final convictions.  (*Milton,* at p. 996.)

The *Milton* court then analyzed whether *Gallardo* applies retroactively to final convictions under the California standard established in *In re Johnson* (1970) 3 Cal.3d 404 (*Johnson*).  The court explained that under *Johnson,* " '[f]ully retroactive decisions are seen as vindicating a right which

6

is essential to a reliable determination of whether an accused should suffer a penal sanction. . . .  [¶] On the other hand, decisions which have been denied retroactive effect are seen as vindicating interests which are collateral to or relatively far removed from the reliability of the fact-finding process at trial.' " (*Milton, supra,* 42 Cal.App.5th at p. 997.)  " 'If the new rule aims . . . to define procedural rights merely incidental to a fair determination of guilt or innocence, it will generally not be given retroactive effect.  [Citations.]  On the other hand, if a decision goes to the integrity of the factfinding process [citation] or "implicates questions of guilt and innocence" [citation], retroactivity is the norm.' " (*Ibid.*)

Applying *Johnson*'s state-law standard, the *Milton* court once again concluded *Gallardo* is not retroactive to final convictions.  First, the court reiterated that *Gallardo* "established a new rule under state law because it 'disapproved' *McGee* and the practice of judicial factfinding to support an increased penalty." (*Milton, supra,* 42 Cal.App.5th at p. 997.)  Next, the court explained why *Gallardo* did not vindicate a right essential to the reliability of a factfinding process:  "[B]y limiting the sentencing court's role and limiting the evidence the court can consider in determining whether to increase the defendant's punishment, the California Supreme Court in *Gallardo* did not impugn the accuracy of factfinding by trial courts.  The Supreme Court in *Gallardo* held that independent inquiry and factfinding by sentencing courts were problematic because such actions 'invaded[d] the jury's province.  [Citation.]  As discussed, however, judicial factfinding is not inherently unreliable or less reliable than jury factfinding." (*Milton,* at p. 998.)  Finally, the court stated that even if the question of retroactivity were a close one, the disruption to courts caused by retroactive application of *Gallardo* weighed against retroactivity:  "Applying *Gallardo* retroactively would cause

7

significant disruption by requiring courts to reopen countless cases, conduct new sentencing hearings, and locate records of proceedings conducted long ago to ascertain 'what facts were necessarily found or admitted in the prior proceeding.' " (*Milton,* at p. 999.)

In *In re Brown* (2020) 45 Cal.App.5th 699, a divided division of the Fourth Appellate District disagreed with *Milton* and concluded that *Gallardo* is retroactive to final convictions. In reaching this conclusion, the court reasoned, under the state law retroactivity standard, that the *Gallardo* analysis "goes to the integrity of the factfinding process when the court determines whether a prior conviction qualifies as a strike. The primary purpose of the *Gallardo* rule is to promote reliable determinations of a defendant's guilt or innocence in committing underlying acts, apart from the elements of a conviction, required to impose a strike." (*In re Brown*, *supra*, at p. 718.) We disagree. As the court explained in *Milton,* the rule from *Gallardo* is grounded upon protecting the Sixth Amendment right to a jury trial, not on the unreliability of judicial factfinding. (See *Milton*, *supra*, 42 Cal.App.5th at p. 995.) "[B]y limiting the sentencing court's role and limiting the evidence the court can consider in determining whether to increase the defendant's punishment, the California Supreme Court in *Gallardo* did not impugn the accuracy of factfinding by trial courts." (*Id.* at p. 998.) Indeed, the United States Supreme Court has rejected the argument that judges are less reliable than jurors in holding that *Apprendi,* from which the new *Gallardo* rule emanates, does not apply retroactively to final convictions. (See *Schriro v. Summerlin* (2004) 542 U.S. 348, 356 ["When so many presumably reasonable minds continue to disagree over whether juries are better factfinders at all, we cannot confidently say that judicial factfinding seriously diminishes accuracy."].) Hence, we agree with the court in *Milton*

8

and the dissent in *Brown* that the new rule prescribed in *Gallardo* is not a change essential to minimize convictions of the innocent, and thus does not apply retroactively to convictions that were final when *Gallardo* was decided.

For that reason, as well as the other reasons more fully set forth in *Milton*, Haden's petition must be denied.[2]  Having reached this conclusion, we need not address whether Haden would be entitled to relief under *Gallardo* if the decision were retroactive.[3]

## DISPOSITION

The petition for writ of habeas corpus is denied.


POLLAK, P. J.

I CONCUR:

BROWN, J.

---

[2] While we do not dispute Haden's contention that a sentence imposed in excess of a court's jurisdiction may be challenged in habeas corpus proceedings, his sentence was imposed in compliance with then-existing procedures well within the trial court's jurisdiction.

[3] We decline to address the Attorney General's argument that Haden's petition was untimely because the issue is beyond the scope of the order to show cause issued by the Supreme Court.

TUCHER, J., Concurring.

I agree with the majority and *In re Milton* (2019) 42 Cal.App.5th 977 (*Milton*) in their application of the federal rule on retroactivity. The standard articulated in *Teague v. Lane* (1989) 489 U.S. 288 (*Teague*) almost never allows for retroactive application on collateral review of a new rule of criminal procedure (*Welch v. United States* (2016) __ U.S. __ [136 S.Ct. 1257, 1265]), and I agree that the rule set forth in *People v. Gallardo* (2017) 4 Cal.5th 120 (*Gallardo*) is both new and procedural. But federal law also leaves room for states to be more generous in retroactively applying new procedural rules, even where a new rule is based on federal constitutional principles. (*In re Gomez* (2009) 45 Cal.4th 650, 655, fn. 3 (*Gomez*).) Applying the approach to retroactivity that the California Supreme Court took in *In re Johnson* (1970) 3 Cal.3d 404 (*Johnson*), I conclude that *Gallardo* is fully retroactive to Haden's case. But applying *Gallardo* to the facts of this case, Haden is not entitled to relief.

## I.

Fifty years ago, the California Supreme Court set forth in *Johnson* a test for determining the retroactive effect of a new precedent. (*Johnson, supra*, 3 Cal.3d at pp. 410–411.) The *Johnson* approach looks primarily to " ' "the purpose to be served by the new standards" ' " a case adopts, giving full retroactive effect to a decision that "vindicat[es] a right which is essential to a reliable determination of whether an accused should suffer a penal sanction." (*Ibid*.) By contrast, precedents that promote interests "collateral to or relatively far removed from the reliability of the fact-finding process at trial" are not retroactive. (*Id*. at pp. 411–412.) In cases where this purpose enquiry is a close question, courts should also consider "the extent of the reliance by law enforcement authorities on the old standards" and "the effect

1

on the administration of justice of a retroactive application" of the new precedent.  (*Id*. at pp. 410, 413.)

*Johnson*, when it was decided, reflected contemporaneous federal law, and in illustrating its approach to retroactivity, the California Supreme Court drew on federal cases.  (*Johnson, supra*, 3 Cal.3d at pp. 410–411.)  For example, U.S. Supreme Court precedent gave full retroactive effect to rules designed to secure the assistance of counsel at various stages of a criminal prosecution (*Stovall v. Denno* (1967) 388 U.S. 293, 297), to require a judge rather than a jury to decide the voluntariness of a defendant's confession (*Jackson v. Denno* (1964) 378 U.S. 368, 376), and to protect a defendant's right to cross-examine witnesses (*Berger v. California* (1969) 393 U.S. 314 [excluding preliminary hearing testimony of absent witness without good-faith effort to secure attendance at trial]; *Roberts v. Russell* (1968) 392 U.S. 293 [excluding jointly-tried codefendant's extrajudicial statement]).  All of these were precedents deemed to enhance the reliability of fact-finding at trial, our Supreme Court explained.  (*Johnson*, at p. 411.)

*Johnson* also reviewed U.S. Supreme Court cases that had denied retroactive effect to new judicial precedents.  For example, *Mapp v. Ohio* (1961) 367 U.S. 643 and other cases excluding illegally-seized evidence were not retroactive because such precedents "have no bearing on guilt or the reliability of the process by which it is tested."  (*Johnson, supra*, 3 Cal.3d at p. 412 [discussing *Linkletter v. Walker* (1965) 381 U.S. 618 and *Desist v. United States* (1969) 394 U.S. 244].)  The exclusionary rule is instead designed to deter the constable's blunders.  The once-new rules of *Miranda v. Arizona* (1966) 384 U.S. 436 and *Escobedo v. Illinois* (1964) 378 U.S. 478 were not retroactive "because those cases seek to protect the right against self-incrimination with prophylactic measures," whereas the issue that affects the

2

reliability of a defendant's confession—whether it was voluntary—remained subject to collateral review. (*Johnson*, at p. 412 [discussing *Johnson v. New Jersey* (1966) 384 U.S. 719].) And cases requiring juries, rather than judges, to decide serious criminal cases were not retroactive because "they did not rest on any assumption that nonjury trials are more likely than jury trials to be unfair or unreliable." (*Johnson*, at p. 412 [discussing *DeStefano v. Woods* (1968) 392 U.S. 631 (*DeStefano*)].)

The issue the California Supreme Court decided in *Johnson* was whether to give retroactive effect to *Leary v. United States* (1969) 395 U.S. 6, a case that effectively prevented the government from prosecuting a person's failure to pay the federal Marijuana Transfer Tax. (*Johnson, supra*, 3 Cal.3d at p. 409.) A person seeking to pay this tax was required to "identify[] himself as a transferee of marijuana," which created an unacceptable " 'risk of self-incrimination,' " according to *Leary*. (*Johnson*, at p. 409.) Although Johnson's conviction for failing to pay the tax was long since final—as was a subsequent conviction alleging the federal tax conviction as a sentencing enhancement—our Supreme Court applied *Leary* to strike the prior conviction. (*Ibid*.) The *Johnson* court reasoned that *Leary* excludes the incriminating evidence and therefore renders "innocent as a matter of law" any defendant who invokes the protections of the Fifth Amendment, so defendant Johnson was "entitled to a retroactive application of *Leary*." (*Johnson*, at p. 416.)

The Attorney General asserts that *Johnson* and *In re Joe R.* (1980) 27 Cal.3d 496 set forth current California law regarding the retroactivity of new cases, and Haden agrees. *Joe R.* articulates the same standard as *Johnson* (*Joe R.*, at p. 511), reaching a different result only because *Joe R.* examines the retroactivity of a Fourth Amendment case. As with other applications of

3

the exclusionary rule, *Joe R.* reasons that the new precedent's "aim was not to protect the integrity of the factfinding process" but " 'to deter illegal conduct by law enforcement officials.' " (*Id.* at pp. 511–512, italics omitted.)

Applying the state-law standard of *Johnson* to the California Supreme Court's decision in *Gallardo*, the majority concludes *Gallardo* is not retroactive because it does "not vindicate a right essential to the reliability of a factfinding process." (Maj. opn. *ante*, at p. 7.) To explain why I disagree with the majority's conclusion, let me start with our common ground. I agree with the majority that *Gallardo* does not " 'impugn the accuracy of factfinding by trial courts.' " (Maj. opn. *ante*, at p. 7.) Nor do I. If *Gallardo* had simply transferred from judge to jury the responsibility to find certain facts underlying a prior conviction, I would hold that the new rule was not retroactive. *Johnson*'s embrace of *DeStefano* would require that result.

But *Gallardo* does something quite different. Instead of transferring responsibility for finding certain facts from judge to jury, it withdraws from the sentencing process entirely any finding of facts beyond "those facts that were established by virtue of the [prior] conviction itself." (*Gallardo*, *supra*, 4 Cal.5th at p. 136.) Only those facts the prior "jury was necessarily required to find to render a guilty verdict, or that the defendant admitted as the factual basis for a guilty plea," may be taken to characterize the prior conviction. (*Ibid.*) *Gallardo* allows neither judge *nor* jury in the present case to supplement such previously-determined facts with new facts, whether gleaned from a review of the prior preliminary hearing transcript or otherwise determined. Supplementary fact-finding as to what were, at the time of the prior conviction, merely " 'amplifying but legally extraneous circumstances' " is simply not allowed. (*Gallardo*, at p. 133.)

4

Justice Chin's disagreement on this point drove him to dissent from *Gallardo*'s discussion of remedy, and the court's response to his dissent reveals the breadth of interests at stake. The dissent advocates for transferring to the jury the supplementary fact-finding previously undertaken by the sentencing judge (*Gallardo, supra*, 4 Cal.5th at p. 140 (conc. & dis. opn. of Chin, J.)), a remedy the court considered inadequate: "[S]uch a proceeding—in which a jury would be impaneled for the sole purpose of reading the preliminary hearing transcript in defendant's prior assault case—would raise significant constitutional concerns," said the court. (*Id.* at p. 138.) Elaborating, *Gallardo* explains that the Constitution requires "facts that are used to increase the defendant's maximum possible sentence" to be "proved in the same way" as are elements of the offense, namely at a jury trial, by proof beyond a reasonable doubt, with all "the procedural safeguards, such as the Sixth Amendment right to cross-examine one's accusers, that normally apply in criminal proceedings." (*Id.* at pp. 138–139.) A paper review of the sort the dissent proposes "might involve a jury, but it would not be much of a trial." (*Id.* at p. 139.)

Because of different constitutional concerns, the *Gallardo* court also rejected as a remedy remanding to let a jury hear live testimony from witnesses to the prior offense. Although live testimony would allow for cross-examination, "forcing the parties to relitigate long-ago events" would "threaten[] defendants with 'harm akin to double jeopardy and denial of speedy trial,'" the court explained. (*Gallardo, supra*, 4 Cal.5th at p. 138.) These constitutional interests animated precedent that neither the court nor the parties questioned in *Gallardo*, precedent that limited sentencing courts to considering the record of conviction on a prior offense. (*Ibid.* [discussing *People v. Guerrero* (1988) 44 Cal.3d 343].)

5

All of this matters because *Johnson* requires us to identify " ' "the purpose to be served by the new standards" ' " *Gallardo* imposes.  (*Johnson, supra*, 3 Cal.3d at pp. 410–411.)  How better to determine the purpose of a new constitutional rule than to examine what remedy the new rule requires?  If *Milton*'s and the majority's characterization of the interests at stake were accurate, then Justice Chin's proposal to transfer from judge to jury the task of reviewing the record of conviction would have been fully adequate to right the constitutional wrong identified in *Gallardo*.  Instead, we see a much broader purpose at work.  The court sought to ensure that all facts "used to increase the defendant's maximum possible sentence" are established in a manner that respects the defendant's right to a jury trial characterized by *all* "the procedural safeguards, such as the Sixth Amendment right to cross-examine one's accusers, that normally apply in criminal proceedings." (*Gallardo, supra*, 4 Cal.5th at pp. 138–139.)

Having thus identified the full range of constitutional interests that *Gallardo* seeks to protect, it seems a simple matter to conclude that the case "vindicat[es] a right which is essential to a reliable" fact-finding.  (*Johnson, supra*, 3 Cal.3d at p. 411.)  Consider just one of the "procedural safeguards" *Gallardo* mentions, the right to cross-examination.  (*Gallardo, supra*, 4 Cal.5th at p. 139.)  *Johnson* itself recognizes that other cases protecting aspects of the right to confront and cross-examine witnesses had been held to be fully retroactive.  (*Johnson,* at p. 411 [discussing *Berger v. California, supra*, 393 U.S. 314 and *Roberts v. Russell, supra*, 392 U.S. 293].)

Moreover, in addressing the facts of the case before it, *Gallardo* makes clear that its new rule is squarely aimed at the reliability of fact-finding.  In sentencing defendant Gallardo, the trial court had been required to determine whether her prior conviction under former Penal Code section 245,

subdivision (a)(1) (section 245(a)(1)) involved a deadly weapon. The trial court found that it did, relying solely on "a transcript from a preliminary hearing at which the victim testified that defendant had used a knife during their altercation." (*Gallardo*, *supra*, 4 Cal.5th at p. 136.) This was error, the Supreme Court explained: "A sentencing court reviewing that preliminary [hearing] transcript has no way of knowing whether a jury would have credited the victim's testimony had the case gone to trial. And at least in the absence of any pertinent admissions, the sentencing court can only guess at whether, by pleading guilty to a violation of [section 245(a)(1)], defendant was also acknowledging the truth of the testimony indicating that she had committed the assault with a knife." (*Gallardo*, at p. 137.) In other words, the sentencing court's fact-finding was insufficiently reliable—not because a judge is less capable of sorting fact from fiction than would be a jury—but because vital information was missing: Would a jury in the prior case "have credited" the victim's testimony about a knife? Did the defendant "acknowledg[e] the truth" of that particular testimony? Left to "guess at" the answers to these questions, the sentencing court could not reliably determine the dispositive fact. (*Ibid.*)

Because the rule of *Gallardo* goes to the reliability of fact-finding at sentencing, I conclude it is retroactive to this case. The three-part rule of *Johnson* would have us also consider the extent to which law enforcement has relied on pre-*Gallardo* law and, relatedly, the disruptiveness inherent in applying the new rule retroactively, but these factors "are of significant relevance only when the question of retroactivity is a close one after the purpose of the new rule is considered." (*Johnson*, *supra*, 3 Cal.3d at p. 410.) And even if the question of retroactivity were a close one in light of *Gallardo*'s purpose, I conclude these two factors do not weigh heavily against

7

retroactivity. The Attorney General does not even mention reliance interests or the burden of disruption in arguing that *Gallardo* should not be retroactively applied.

I acknowledge that some number of defendants are serving time on final judgments that will be subject to challenge if *Gallardo* is retroactive. This group includes defendants whose sentences were enhanced for an out-of-state prior from a state that defines certain crimes more broadly than does California, and defendants whose sentences were enhanced for prior convictions under former section 245(a)(1). But when the California Supreme Court decided another case with a similar potential to disrupt final judgments, it easily determined its new rule was retroactive. *People v. Tenorio* (1970) 3 Cal.3d 89, decided just two months before *Johnson,* invalidated on separation of powers grounds a statute that prevented trial courts in narcotics cases from striking prior convictions except on motion of the district attorney. (*Tenorio,* at pp. 91, 95.) After deciding the merits of the challenge, the court added in a footnote, "[i]nasmuch as today's decision relates only to sentencing and will not require any retrials, . . . it should enjoy fully retroactive effect." (*Id.* at p. 95, fn. 2.) By analogy here, *Gallardo* relates only to sentencing, will not require any retrials, and by its own terms allows sentencing courts to consider only such documents as are already in the record on the prior conviction (and likely in the record on the offense of conviction as well).

The relative ease with which *Gallardo* may be retroactively applied comes into stark relief when we consider the far more disruptive effect of a rule whose effects are not confined to sentencing. A sister court declined retroactively to apply the limits on expert testimony that our Supreme Court set forth in *People v. Sanchez* (2016) 63 Cal.4th 665, 686 because doing so

8

"would be too disruptive and costly" to the administration of justice. (*In re Thomas* (2018) 30 Cal.App.5th 744, 766.) Retroactivity for *Sanchez* would require "reopening thousands of cases in which the prosecution" had reasonably relied on the prior rule, and in the ensuing years necessary evidence "likely has gone stale." (*Id.* at pp. 766–767.) By contrast here, before *Gallardo* the prosecution would have relied on paper records to prove certain facts about a prior conviction. After *Gallardo*, the court may look no further than those same paper records, or perhaps a subset of them, to decide whether a sentencing enhancement is proper. Thus, the reliance of law enforcement on pre-*Gallardo* case law and the disruptiveness inherent in retroactivity do not seem so extreme as to deny *Gallardo* retroactive effect.

The foregoing discussion comes with a significant caveat. I have assumed the parties are correct that *Johnson* is still good law. By 1989 the United States Supreme Court had moved decisively away from the purpose-based approach of *Johnson*,[1] replacing it with an approach that asks first whether the legal rule in question was "dictated by precedent existing at the time the defendant's conviction became final," or could properly be considered a "new rule." (*Teague*, *supra*, 489 U.S. at p. 301, italics omitted.) Then, whether to apply a new rule retroactively depends on whether defendant's conviction was final before the rule was announced and, if final, whether the new rule was substantive or procedural. Rules that are not new, or that are substantive, are fully retroactive; rules that are both new and procedural are, with vanishingly few exceptions, retroactive only to cases pending on direct

---

[1] Even in 1970, the California Supreme Court's approach to retroactivity appears to have been more generous in practice than the federal approach. (Compare *Mackey v. United States* (1971) 401 U.S. 667 [two decisions excluding gambling tax returns as self-incriminating are not retroactive] with *Johnson*, *supra*, 3 Cal.3d at p. 416 [decision excluding marijuana tax return as self-incriminating is retroactive].)

appeal.  (*Teague, supra*, 489 U.S. at pp. 310–311; *Welch v. United States* (2016) __ U.S. __ [136 S.Ct. 1257, 1265].)

The California Supreme Court has never adopted *Teague*, although it has supplemented *Johnson* with principles that parallel *Teague*.  For example, without reference to *Johnson* or *Teague* our Supreme Court has held that new rules that are substantive rather than procedural should be applied retroactively, even to cases that are final for purposes of appeal.  (See *In re Martinez* (2017) 3 Cal.5th 1216, 1222–1223 [*People v. Chiu* (2014) 59 Cal.4th 155, narrowing aider and abettor liability for premeditated homicide, is fully retroactive]; *People v. Mutch* (1971) 4 Cal.3d 389, 395–396 [finality is no bar to applying new kidnapping precedent that construes "a substantive definition of crime duly promulgated by the Legislature"].)

The California Supreme Court has also applied *Teague* in a case where it knew that federal courts would have found retroactivity under *Teague*.  The question in *Gomez* was whether *Cunningham v. California* (2007) 549 U.S. 270 was retroactive to cases that became final shortly before *Cunningham* was decided.  (*Gomez, supra*, 45 Cal.4th at p. 653.)  The court held that *Cunningham* was retroactive because, after *Blakely v. Washington* (2004) 542 U.S. 296, the constitutional writing was on the wall, such that *Cunningham* could no longer be considered a truly new rule.  (*Gomez*, at p. 660.)  State courts should "provide a remedy on collateral review of a final judgment if that remedy would be available in the federal courts," and federal courts would have applied *Teague* to find *Cunningham* retroactive, our high court reasoned.  (*Gomez*, at pp. 655–656.)  The logic of *Gomez* renders *Teague* a sort of one-way ratchet.  Precedents that federal courts would find fully retroactive under *Teague* apply retroactively in state court as well; precedents that under *Teague* apply only on direct review may nonetheless be

10

fully retroactive in state court, under the purpose-based approach of *Johnson*. (See *Gomez*, at p. 655, fn. 3.)

With the intervening sea-change in federal law governing retroactivity, the California Supreme Court may decide the time has come to revisit *Johnson*, and it will soon have the opportunity to do so. (*In re Milton* (Apr. 17, 2020, S259954) ___Cal.5th___ [2020 Cal. LEXIS 2736].) But as long as *Johnson* remains the California approach to assessing retroactivity, I conclude *Gallardo* is fully retroactive.

## II.

Although *Gallardo* applies to cases such as Haden's that were final before the California Supreme Court decided *Gallardo*, it turns out the rule of *Gallardo* affords Haden no relief. Haden challenges here the sentencing court's determination that his two prior convictions for robbery in North Dakota count as serious felonies and therefore "strikes" under California's Three Strikes law. (Pen. Code, former §§ 1197.2, subd. (c)(23), 1170.12.) Haden correctly argues that North Dakota defines robbery broadly, sweeping in conduct that is not a serious felony or a strike in California. But as we will see, the overbreadth Haden identifies is not dispositive because the charging documents in both of his North Dakota cases show that Haden pleaded guilty to conduct falling squarely within California's definition of a serious felony and a strike.

North Dakota defines robbery to include threatening or inflicting bodily injury "in the course of committing a theft," even during an unsuccessful attempt to commit theft. (N.D. Cent. Code, § 12.1-22-01.) "It is therefore, possible under [North Dakota's] statute to commit robbery without committing theft." (*State v. McKing* (N.D. 1999) 593 N.W.2d 342, 344.) Not so in California, where the crime of robbery requires a completed theft. (See

11

e.g., *People v. Gomez* (2008) 43 Cal.4th 249, 254.) Because North Dakota broadly defines robbery, it is not enough to establish the alleged priors that Haden was twice convicted of that crime. The Attorney General concedes that "a North Dakota robbery without a [completed] theft would not qualify as a serious felony or strike in California."

However, the charging documents and judgments in Haden's North Dakota cases show that in both robberies Haden completed his thefts. The sentencing court had before it two criminal informations. One alleged Haden "committed the crime of Robbery, committed as follows: . . . he took $88.00 from another while threatening him with a dangerous weapon, a butcher knife." The other alleged Haden "committed the crime of Robbery, committed as follows: . . . he took property from another while threatening him with a dangerous weapon, a butcher knife." Both charging documents specifically allege that Haden "took,"—that is, completed the theft of—the property in question. The informations do not charge, nor were they amended to state, that Haden merely attempted to take money or property from another. In both cases, the criminal judgments state Haden was convicted by guilty plea of "robbery as charged in the Information."

*Gallardo* allows a sentencing court to determine, "based on the record of the prior plea proceedings, that defendant's guilty plea encompassed a relevant admission about the nature of [his] crime." (*Gallardo, supra*, 4 Cal.5th at p. 139.) The records in Haden's North Dakota plea proceedings establish that Haden indeed made relevant admissions. By pleading guilty "as charged in the Information," Haden admitted that both robberies involved completed, not just attempted, thefts. Haden admitted he "took" money and property by threatening his victims with a knife. His prior convictions are, accordingly, serious felonies and strikes under California law.

Haden disputes this application of *Gallardo*, arguing that here the sentencing court should not have looked beyond the elements of the North Dakota statute to which Haden pleaded guilty. He argues that the Sixth Amendment only allows *Gallardo*'s limited record review where a conviction was obtained under a divisible statute, which is a statute that includes alternative elements, and that North Dakota's robbery statute is indivisible. The problem with this argument is that *Gallardo* itself rejects it. *Gallardo* does discuss two United States Supreme Court cases construing the Armed Career Criminal Act ("ACCA")—cases in which the difference between divisible and indivisible statutes is important. (*Gallardo, supra*, 4 Cal.5th at pp. 132–133 [discussing *Descamps v. United States* (2013) 570 U.S. 254, and *Mathis v. United States* (2016) ___U.S.___ [136 S.Ct. 2243].) But *Gallardo* cautions against confusing statutory construction with constitutional mandate: "[T]he high court did not hold that the Sixth Amendment, as opposed to the federal ACCA, forbids" the court from conducting a limited record review "when the statute of conviction has a single, 'indivisible' set of elements (*Descamps*) or when it sets out alternative means, rather than alternative elements constituting the same crime (*Mathis*)." (*Gallardo, supra*, 4 Cal.5th at pp. 134–135.) Because the federal ACCA plays no part in this case, the distinction that *Descamps* and *Mathis* draw between divisible and indivisible statutes is of no moment. The Sixth Amendment does not require sentencing courts to distinguish divisible from indivisible statutes, and *Gallardo* does not import this distinction into California law. *Gallardo* is, for example, completely silent on whether former section 245(a)(1) sets forth alternative elements or alternative means, defining a divisible or an indivisible crime. This silence confirms that *Gallardo*'s limited record review is proper for priors obtained under either a divisible or an indivisible statute.

13

In sum, I conclude *Gallardo* is fully retroactive, but it affords Haden no relief.  I therefore join the majority in denying the petition for habeas corpus.


TUCHER, J.

BROWN, J., Concurring.

I fully join the lead opinion, and I write separately only to explain certain points of disagreement with the thoughtful analysis in Justice Tucher's concurring opinion.

In my view, the concurrence places a significant amount of weight on portions of *People v. Gallardo* (2017) 4 Cal.5th 120 (*Gallardo*) in which the Court did not purport to address the purpose of its holding, for the simple reason that it had no need to. Citing certain parts of *Gallardo*, Justice Tucher deduces that the Supreme Court's ruling was motivated by an unspoken purpose to promote reliability. (Conc. opn. *ante*, at pp. 5–6.) Impressed though I am with its eloquence, I am unconvinced by the concurrence's approach.

First, the Court in *Gallardo* did not "make[] clear that its new rule is squarely aimed at the reliability of fact-finding." (Conc. opn. *ante*, at p. 6.) Indeed, the word "reliability" and its cognates appear nowhere in the majority opinion; it seems likely that if the Supreme Court had wished to "make clear" that the purpose of its holding was reliability, it could and would have done so. In my view, *Gallardo* is instead focused upon no more or less than protecting the Sixth Amendment right to jury trial, as first embraced by the United States Supreme Court in *Apprendi v. New Jersey* (2000) 530 U.S. 466 (*Apprendi*) and as more fully expounded upon in *Descamps v. United States* (2013) 570 U.S. 254 (*Descamps*) and *Mathis v. United States* (2016) 579 U.S. ___ [136 S.Ct. 2443] (*Mathis*). (*Gallardo*, 4 Cal.5th at pp. 124–125.) Following the high court's elucidation of Sixth Amendment principles in *Descamps* and *Mathis,* our Supreme Court held that "the trial court violated defendant's Sixth Amendment right to a jury trial" when it reviewed a preliminary hearing transcript to assess whether

1

the prior conviction qualified as a serious felony. (*Ibid.*) The *Gallardo* Court cited *Apprendi* in explaining that "when the sentencing court must rely on a finding regarding the defendant's conduct, but the jury did not necessarily make that finding (or the defendant did not admit to that fact), the defendant's Sixth Amendment rights are violated. (*See Apprendi*, *supra*, 530 U.S. at p. 490.)" (*Gallardo, supra*, 4 Cal.5th at p. 135.) The Supreme Court founded its reasoning upon *Descamps*' "considered and unequivocal" statement that "[t]he jury trial right is violated when a court adds extra punishment based on factfinding that goes 'beyond merely identifying a prior conviction' by 'try[ing] to discern what a trial showed, or a plea proceeding revealed, about the defendant's underlying conduct.' (*Descamps, supra,* 540 U.S. at p. 269.)" (*Gallardo*, at p. 135.) Thus, *Gallardo*'s laser focus was on vindication of the jury trial right, without a further nod to any underlying motivation relating to reliability.

Notwithstanding the absence of the word "reliability" from *Gallardo* itself, Justice Tucher's concurrence infers a tacit purpose to promote reliability in the majority's rejection of a jury trial remedy. The concurrence quotes *Gallardo* as follows: "[S]uch a proceeding—in which a jury would be impaneled for the sole purpose of reading the preliminary hearing transcript in defendant's prior assault case—would raise significant constitutional concerns,' said the court." (Conc. opn. *ante*, at p. 5.) Missing from that quotation, however, are the final two words of the quoted sentence from *Gallardo*. The full quotation from *Gallardo* reads as follows: " '[S]uch a proceeding—in which a jury would be impaneled for the sole purpose of reading the preliminary hearing transcript in defendant's prior assault case—would raise significant constitutional concerns <u>under *Apprendi*.</u>" (*Gallardo, supra,* 4 Cal.5th at p. 138, underlining added.) Those two omitted

2

words are important because, as the lead opinion correctly notes, the United States Supreme Court has squarely held that cases protecting the Sixth Amendment jury trial right are not retroactive because the Court "[could] not confidently say" that the judicial factfinding prohibited by *Apprendi* "*seriously* diminishes accuracy." (*Schriro v. Summerlin* (2004) 542 U.S. 348, 356 (*Schriro*).)  In *Schriro,* the Court refused to give retroactive effect to *Ring v. Arizona* (2002) 536 U.S. 584 (*Ring*), which had extended to Arizona's death penalty scheme the *Apprendi* rule requiring a jury finding on any fact that would increase a penalty beyond the prescribed statutory maximum " '[o]ther than the fact of a prior conviction.' " (*Schriro,* at pp. 350–351; *see also DeStefano v. Woods* (1968) 392 U.S. 631, 633–634 (*DeStefano*) [cases extending Sixth Amendment jury trial right to states not retroactive].)

Schriro was decided under the *Teague v. Lane* (1989) 489 U.S. 288 (*Teague*) standard for retroactivity, and Justice Tucher's concurrence correctly notes that the *Teague* retroactivity analysis is fashioned somewhat differently than the pre-*Teague* United States Supreme Court standards adopted by our Supreme Court in *In re Johnson* (1970) 3 Cal.3d 404 (*Johnson*).  (*See id.* at p. 410 [adopting and quoting the three-factor retroactivity test set forth in *Desist v. United States* (1969) 394 U.S. 244 (*Desist*)].)  In *Johnson,* our Supreme Court held that the first factor in the retroactivity analysis is the " ' "purpose to be served by the new standards," ' " and explained that under United States Supreme Court precedent, "[f]ully retroactive decisions are seen as vindicating a right which is *essential to a reliable determination* of whether an accused should suffer a penal sanction." (*Johnson*, at pp. 410–411.)  Under the *Teague* formulation, procedural rules given retroactive effect are those "without which the likelihood of an *accurate* conviction is *seriously* diminished." (*Schriro*, *supra*,

3

542 U.S. at p. 352, first italics added; *see also Whorton v. Bockting* (2007) 549 U.S. 406, 418 (*Whorton*) [for a procedural rule to be retroactive, it must first be "necessary to prevent 'an " 'impermissibly large risk of an *inaccurate* conviction,' " ' " italics added].)  The first factor of the *Johnson* test and the first prong of the *Teague* retroactivity test for procedural rules are thus ultimately not so distinct, as they are both centered on the reliability, or accuracy, of convictions.

Perhaps more importantly, in deciding *Schriro,* the Supreme Court specifically found its decision in *DeStefano*—which was "decided under [the] pre-*Teague* retroactivity framework"—to be "on point" and "germane" to its analysis of whether to give retroactive effect to *Ring* (and, by extension, *Apprendi*).  (*Schriro, supra*, 542 U.S. at pp. 356–357.)  As noted above, the "pre-*Teague* retroactivity framework" referred to in *Schriro* is precisely the three-factor test adopted in 1970 by our Supreme Court in *Johnson*. (*Johnson, supra*, 3 Cal.3d at p. 410.)  In *DeStefano,* after citing the same three-factor test later adopted in *Johnson,* the Supreme Court refused to give retroactive effect to *Duncan v. Louisiana* (1968) 391 U.S. 145 (*Duncan*), which applied the Sixth Amendment's jury trial guarantee to the states. (*DeStefano, supra*, 392 U.S. at pp. 633–634 ["[a]ll three factors favor only prospective application of the rule" in *Duncan*, as the Court would not assert " 'that every criminal trial—or any particular trial—held before a judge alone is unfair or that a defendant may never be as fairly treated by a judge as he would be by a jury' "].)  Because the Supreme Court in *Schriro* followed its own "on point" pre-*Teague* jurisprudence in *DeStefano, Schriro*'s refusal to grant retroactive effect to *Ring* and *Apprendi* sheds significant light on how *Johnson* applies to *Gallardo*, which rests on the same Sixth Amendment jury trial right as discussed in *Schriro* and *DeStefano*.  Put another way, that

4

*Schriro* was decided under the *Teague* standard for retroactivity does not mean we can disregard it in assessing the question of how we should apply *Johnson* here. Quite to the contrary, as *Schriro*'s embrace of *DeStefano* shows.

In continuing with the theme of reliability, Justice Tucher's concurrence asks, "How better to determine the purpose of a new constitutional rule than to examine what remedy the new rule requires?" (Conc. opn. *ante*, at p. 6.) But as the concurrence itself points out, the remedy fashioned in *Gallardo*—whereby a trial court determines which facts were necessarily found or admitted in a prior proceeding—was intended to address not only the Sixth Amendment right to a jury trial, but also the Sixth Amendment right to a speedy trial and the Fifth Amendment's prohibition against double jeopardy. (*Gallardo*, *supra,* 4 Cal.5th at p. 138.) One cannot realistically divine a single unspoken "purpose" of *Gallardo* by looking at a remedy that had to accommodate multiple constitutional mandates. In any event, even if one focuses solely on the remedy, it is evident that the remedy is directed at correcting violations of the right to a jury determination of a sentence-enhancing fact. A trial court applying *Gallardo* must assess what facts a jury necessarily found, or what facts a defendant admitted after waiving the right to a jury determination as part of a plea.

In finding a "much broader purpose at work" (conc. opn. *ante*, at p. 6.), Justice Tucher's concurrence hones in on the Sixth Amendment's confrontation clause by quoting *Gallardo*'s statement that facts used to increase a sentence must be proved at a jury trial with all " 'the procedural safeguards, such as the Sixth Amendment right to cross-examine one's accusers, that normally apply in criminal proceedings.' " (Conc. opn. *ante*, at p. 6, quoting *Gallardo*, *supra*, 4 Cal.5th at pp. 138–139.) The concurrence,

5

however, fails to recognize that the United States Supreme Court has determined that *Crawford v. Washington* (2004) 541 U.S. 36—its most significant confrontation clause case this century—is not retroactive to cases final on appeal.  (See *Whorton, supra*, 549 U.S. 406.)  Applying *Teague*, the Court believed that the *Crawford* rule, which curtailed the use of "testimonial" hearsay, was not one " ' "without which the likelihood of an accurate conviction is seriously diminished." ' " (*Id.* at p. 420.)  Contrasting the *Crawford* rule with the right to counsel recognized in *Gideon v. Wainwright* (1963) 372 U.S. 335, the Court explained:  "The *Crawford* rule is much more limited in scope, *and the relationship of that rule to the accuracy of the factfinding process is far less direct and profound*."  (*Whorton*, at p. 419, italics added.)

It is true, as Justice Tucher's concurrence explains, that under the pre-*Teague* standard, the United States Supreme Court gave retroactive effect to rules relating to a defendant's right to confront witnesses.  But review of those cases reveals they involved a right with a far stronger connection to a reliable determination of guilt or innocence than did *Gallardo*.  In *Roberts v. Russell* (1968) 392 U.S. 293 (*Roberts*) the Supreme Court gave retroactive effect to *Bruton v. United States* (1968) 391 U.S. 123, a landmark confrontation clause decision that precluded the admission of a nontestifying defendant's confession that implicated a codefendant.  (*Roberts*, at p. 295.)  In *Berger v. California* (1969) 393 U.S. 314 (*Berger*), the Court gave retroactive effect to *Barber v. Page* (1968) 390 U.S. 719, where the Court held that the confrontation clause prohibits the introduction of a witness's preliminary hearing testimony unless the prosecution has made a good faith effort to secure the witness's presence at trial.  (*Berger*, at p. 315.)

6

The rules in *Roberts* and *Berger* thus remedied a situation where a defendant clearly lacked any ability to confront a witness at trial. With *Gallardo*, by contrast, we can only speculate whether the denial of the right to have a jury decide a sentence-enhancing fact also resulted in the denial of a defendant's separate and distinct right to confront witnesses about that fact. And if one does engage in such speculation, there are many situations in which a defendant will have received a sentencing enhancement without any confrontation clause infirmity. Haden's case is illustrative, as he admitted the sentence-enhancing fact of taking property (and therefore committing a theft) when pleading guilty to robbery in North Dakota. This admission eliminates any concern that he was denied his Sixth Amendment right to confront a witness about completing the theft. Even for a defendant who proceeds to trial under a robbery statute like North Dakota's, any concern that the defendant was denied the right to confront witnesses about completing a theft is minimal. Notably, a defendant charged with robbery in North Dakota would be incentivized to cross-examine witnesses about whether he completed a theft if it truly was a contested issue, as completion of the theft would be probative of whether the defendant intended to commit a robbery, as distinguished from mere assault or battery. In other cases, a defendant might never challenge whether a theft was completed if, for example, the completion was undisputed and his defense at trial was misidentification, as presented through alibi witnesses. What these examples (and many others) demonstrate is that, unlike the rights at issue in *Russell* and *Berger*, the jury trial right vindicated in *Gallardo* is not necessarily tethered to a defendant's separate right confront witnesses. Rather, the right upheld in *Gallardo* is "collateral to or relatively far removed

7

from the reliability of the fact-finding process at trial." (*Johnson*, *supra*, 3 Cal.3d at pp. 411–412.)

The concurrence also infers a purpose to promote reliability from *Gallardo*'s discussion of the trial court's use of a preliminary hearing transcript to determine whether the prior conviction involved a deadly weapon. In quoting snippets from *Gallardo*, Justice Tucher's concurrence states: "In other words, the sentencing court's fact-finding was insufficiently reliable—not because a judge is less capable of sorting fact from fiction than would be a jury—but because vital information was missing: Would a jury in the prior case 'have credited' the victim's testimony about a knife? Did the defendant 'acknowledg[e] the truth' of that particular testimony? Left to 'guess at' the answers to these questions, the sentencing court could not reliably determine the dispositive fact." (Conc. opn. *ante*, at p. 7.) But the portion of *Gallardo* quoted by the concurrence says nothing about the reliability of judicial fact-finding. Instead, the Court's focus is on the *identity* of the fact-finder (or fact-admitter). A full quotation of the relevant portion of *Gallardo* makes clear this core concern: "The Court of Appeal concluded this [review of the preliminary hearing transcript] was permissible under *Descamps* because that decision allows trial courts to 'consult "a limited class of documents, such as indictments and jury instructions," ' in order to identify which elements of the statute 'formed the basis of the prior conviction.' Because 'nothing in *Descamps* excludes the preliminary hearing transcript from that class of documents,' the court concluded that the sentencing court properly used the transcript to determine that defendant's conviction was based on assault with a deadly weapon and thus qualified as a serious felony within the meaning of the Three Strikes law. [¶] While *Descamps* does permit courts to rely on certain documents to identify the precise statutory basis for

8

a prior conviction, the documents listed in *Descamps*—'indictments and jury instructions' (*Descamps, supra,* 570 U.S. at p. 287)—differ from the preliminary hearing transcript here in a meaningful way.  An indictment or jury instructions might help identify what facts *a jury necessarily found in the prior proceeding.*  (See *Shepard*[ *v. United States* (2005)] 544 U.S. [13,] 20–21.)  But defendant's preliminary hearing transcript can reveal no such thing.  A sentencing court reviewing that preliminary transcript has no way of knowing whether *a jury* would have credited the victim's testimony had the case gone to trial.  And at least in the *absence of any pertinent admissions,* the sentencing court can only guess at whether, by pleading guilty to a violation of Penal Code section 245, subd. (a)(1), defendant was also acknowledging the truth of the testimony indicating that she had committed the assault with a knife." (*Gallardo, supra,* 4 Cal.5th at pp. 136–137, italics added.)  When this portion of *Gallardo* is read in its full context, therefore, it becomes apparent that the problem identified by the Supreme Court with the use of the preliminary hearing transcript was not that it was an unreliable method for determining what happened, as the concurrence seems to suggest; the problem with using the preliminary hearing transcript is that it reveals nothing about what a jury necessarily found or the defendant necessarily admitted, as required to protect a defendant's Sixth Amendment jury trial right.

Finally, Justice Tucher's concurrence may understate the disruptive effect of applying *Gallardo* retroactively to final convictions.  The concurrence believes that *Gallardo* can be applied retroactively to final cases with "relative ease" because it relates "only to sentencing, will not require any retrials, and by its own terms allows sentencing courts to consider only such documents as are already in the record on the prior conviction (and likely in

9

the record on the offense of conviction as well).” (Conc. opn. *ante*, at p. 8.) It is not at all clear, however, that a *Gallardo*-compliant procedure can be undertaken with “relative ease.” A record of conviction oftentimes will lack critical documents that would show whether defendant’s guilty plea “encompassed a relevant admission about the nature of her crime.” (*Gallardo*, *supra*, 4 Cal.5th at p. 139.) This includes a transcript of a defendant’s plea colloquy which, unlike a preliminary hearing transcript, may often not be requested by a prosecutor or defendant, as neither party would need it for ongoing proceedings in run-of-the-mill cases resolved by plea. (Cf. Pen. Code, § 869, subd. (e) [requiring court reporter to create transcript of preliminary hearing within 10 days in any felony case in which a defendant is held to answer, or upon request of either party in all other cases].) Retroactive application of *Gallardo* could force prosecutors to go on a scavenger hunt of sorts where they would have to augment a record by tracking down old court files and personnel—no easy task for convictions, such as Haden’s, that occurred decades ago in other jurisdictions.

For these reasons, I must respectfully disagree with Justice Tucher’s view as to whether *Gallardo* is retroactive, although I agree that even if it were, Haden would not be entitled to relief.

BROWN, J.

10

Trial court:                San Mateo County Superior Court

Trial judge:                Honorable Carl W. Holm

Counsel for Petitioner:     Gene Vorobyov, under appointment by the Court
                            of Appeal

Counsel for Respondent:     Xavier Becerra
                            Attorney General of California
                            Lance E. Winters
                            Chief Assistant Attorney General
                            Jeffrey M. Laurence
                            Senior Assistant Attorney General
                            Donna M. Provenzano
                            Supervising Deputy Attorney General
                            David H. Rose
                            Deputy Attorney General

A158376

1